Juan Miguel OROZ, Appellant (Plaintiff below),

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF CARBON, Appellee (Defendant below),

and

David H. Hayes (Defendant below).

No. 4787.

Supreme Court of Wyoming.

March 15, 1978.

Kermit C. Brown of MacPherson, Golden & Brown, Rawlins, for appellant.

John L. Hoke, Deputy Carbon County Atty., Rawlins, for appellee.

Before GUTHRIE, C. J., and McCLIN-TOCK, RAPER, THOMAS, and ROSE, JJ.

GUTHRIE, Chief Justice.

This is an appeal from a judgment of the district court which dismissed a claim based upon negligence asserted against Carbon County, Wyoming. Appellant, plaintiff below, brought an action to recover for injuries suffered in an automobile accident occurring as a result of a collision between appellant's car and David H. Hayes on a county road in Carbon County. The original complaint named only David H. Hayes, the operator of the other vehicle, as a defendant. Hayes, then, as a matter of defense, asserted the negligence of Carbon County; and plaintiff filed an amended complaint joining the county, asserting its negligence, and based upon the fact that the county had allowed a grove of willows along the road to grow and obscure the intersection so that plaintiff could not see the approaching car of defendant on the intersecting road. In response thereto, Carbon County, in its answer, joined a motion to dismiss upon the ground that the Board of County Commissioners of Carbon County was immune from suit in the performance of any governmental functions and that it was not covered by insurance which would cover liability in the operation and maintenance of its county roads.

Upon hearing of this motion, the trial court, which had converted this motion into a summary judgment proceeding by virtue of its reliance upon interrogatories and other matters in the file, found that appellee was not covered by any liability insurance and held that it had immunity from liability because it was a governmental agency. A final judgment was entered for the county with a determination that there was no just reason for delay under Rule 54(b), W.R.C.P.

This case, then, poses directly the question, Is Carbon County immune from suit and liability for a tort caused by its negligent maintenance of a county highway?

In light of the frequent occurrence with which this question of immunity has been submitted to this court, and a review of the rapid changes which have taken place in this area, it now seems imperative that we re-examine and settle the applicability of

the doctrine of governmental immunity in this jurisdiction as it applies to counties.

Although we recognize that a reconsideration of this rule may appear to do violence to the doctrine of stare decisis, we are unable in this case, as we were in *Collins v. Memorial Hospital of Sheridan County,* Wyo., 521 P.2d 1339, 1341, to use the doctrine "as a justification for the continuance of an unfair and improper rule which operates to the detriment of those who may suffer tortious injury" under these circumstances.

It is rather commonly accepted that the doctrine of municipal, county or local district immunity from tort as applied by the courts found its genesis in *Russell v. The Men of Devon,* 2 Term.Rep. 667, 100 Eng. Rep. 359 (1788). See *Collins v. Memorial Hospital of Sheridan County,* supra; *Muskopf v. Corning Hospital District,* 55 Cal.2d 211, 11 Cal.Rptr. 89, 91, 359 P.2d 457, 459; *Hargrove v. Town of Cocoa Beach,* Fla., 96 So.2d 130, 132, 60 A.L.R.2d 1193; *Haney v. City of Lexington,* Ky., 386 S.W.2d 738, 739, 10 A.L.R.2d 1362; *Merrill v. City of Manchester,* 114 N.H. 722, 332 A.2d 378, 380; *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877, 879; *Long v. City of Weirton,* W.Va., 214 S.E.2d 832, 851; *Holytz v. City of Milwaukee,* 17 Wis.2d 26, 115 N.W.2d 618, 620; Prosser, Law of Torts, § 131, p. 978 (4th Ed.); cf., *Jivelekas v. City of Worland,* Wyo., 546 P.2d 419, 425. Under this view, municipal immunity cannot be held to be a legislative rule by virtue of § 8–3–101, W.S.1977, as was held in *Maffei v. Incorporated Town of Kemmerer,* 80 Wyo. 33, 338 P.2d 808, rehearing denied 340 P.2d 759.

This court has heretofore noticed and commented upon the inequities and hardships which followed the application of this doctrine, but we have withheld our hand

because of the view that the doctrine somehow originated before 1607, and enunciated instead our helplessness in the face of the assertion that this was a legislative rule, *Lutheran Hospitals and Homes Society of America v. Yepsen,* Wyo., 469 P.2d 409, 410, and cases cited therein. This is an evasion of judicial responsibility. Since the rule is a creature of the courts, we not only have the power but the duty and responsibility to re-examine the efficacy of such an anachronistic doctrine in modern day society, *Spanel v. Mounds View School District No. 621,* 264 Minn. 279, 118 N.W.2d 795, 803.

Although at one time there was a clear majority of jurisdictions which recognized the application of the doctrine of immunity of states and local governmental entities, it would appear that this is no longer the case, and there is a steady march to eliminate it.[1] The appendix to *Hicks v. State,* supra, indicates that as of March 30, 1973, there were 21 states which had abolished it while 9 states have partially abolished it. Additionally, that court called attention to the fact that 3 states thereafter, and prior to the issuance of that opinion, abolished immunity in some form,[2] which indicates at the date of the *Hicks* decision there were 34 states which have taken such action. We also take notice that New Hampshire judicially abolished municipal immunity,[3] and Missouri in a recent case, being *Jones v. State Highway Commission,* Mo., 557 S.W.2d 225 (decided September 12, 1977), judicially abolished immunity of the state and governmental subdivisions. This would now make a total of 36.

This writer is familiar with no other area of the law which has been so exhaustively discussed, both by way of decision and legal writing. Its repetition in this opinion could serve no good purpose, and we incorporate herein those authorities mentioned in *Jiv-*

---

1. See *Jivelekas v. City of Worland,* supra, at 426, citing *Hicks v. State,* 88 N.M. 588, 544 P.2d 1153, 1155–1156.

2. *Brown v. Wichita State University,* 217 Kan. 279, 540 P.2d 66, vacated in part 219 Kan. 2, 547 P.2d 1015 (immunity of state legislatively reimposed); *Ayala v. Philadelphia Board of Public Education,* supra; *Long v. City of Weirton,* supra.

3. *Merrill v. City of Manchester,* supra.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*elekas,* supra, 546 P.2d at 426–428.[4] *Jones v. State Highway Commission,* supra, contains a detailed and logical discussion of the asserted reasons for the retention of this doctrine, and proceeds to demolish them.[5]

A good summary of the reasons for removing this doctrine from our law appears in *Muskopf v. Corning Hospital District,* supra, 11 Cal.Rptr. at 92, 359 P.2d at 460:

"The rule of governmental immunity for tort is an anachronism, without rational basis, and has existed only by the force of inertia. [Citations.] It has been judicially abolished in other jurisdictions. [Citations.]"

See also generally 2 Harper and James, The Law of Torts, § 29.3, pp. 1610–1613 (1957); Prosser, Law of Torts, § 131, pp. 977–987 (4th Ed.). The origin of this doctrine of immunity has been styled as "one of the mysteries of legal evolution," Borchard, Governmental Responsibility in Tort, 34 Yale L.J. 1, 4.

The Congress of the United States, in 1946, waived the immunity of the United States in tort actions and authorized recoveries therefor, 28 U.S.C.A. §§ 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671–2680, which is clearly a recognition by Congress of the unfair and inequitable consequences flowing from an enforcement of such doctrine.

▆▆▆▆▆ We hold that the immunity from tort liability heretofore judicially conferred upon counties (municipal corporations, school districts, and other subdivisions of government)[6] is abrogated. Henceforth, the rule is liability—the exception is immunity, *Holytz v. City of Milwaukee,* supra. The removal of immunity, however, does not mean that a governmental entity is liable for all harm that results from its activities. It does not impose absolute or strict liability, but merely subjects it to the same rules as private persons or corporations if a duty has been violated and a tort has been committed. It places the onus on the governmental body under the doctrine of respondeat superior for injuries negligently caused by its agents, servants and employees in the course of their employment, *Jones v. State Highway Commission,* supra, 557 S.W.2d at 230; *Johnson v. Municipal University of Omaha,* 184 Neb. 512, 169 N.W.2d 286, 288; *Merrill v. City of Manchester,* supra, 332 A.2d at 384. This decision, however, is not to be interpreted as imposing liability upon a governmental body for acts or omissions in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions, *Hargrove v. Town of Cocoa Beach,* supra, 96 So.2d at 133; *Holytz v. City of Milwaukee,* supra, 115 N.W.2d at 618. We herein specifically reverse all prior decisions of this court which hold or suggest that a county or other such political subdivision has or enjoys an immunity from tort liability.

Arguendo, even if we were to adhere to the view of *Maffei,* that it was adopted as a part of the common law, we might possibly apply the rule enunciated in *Fuchs v. Goe,* 62 Wyo. 134, 163 P.2d 783, 792, 166 A.L.R. 1329, which suggested that the principles of the common law were adopted only so far as they fit into "our circumstances, state of society, and form of government." This theory is suggested and employed by the New Mexico Supreme Court in *Hicks v. State,* 88 N.M. 588, 544 P.2d 1153, 1155, and certainly counties and other municipal corporations as we know them today were unknown in 1607; nor could there have been any reasonable contemplation of our present society by the judges at that time.

---

**4.** *Muskopf v. Corning Hospital District,* supra, 11 Cal.Rptr. at 90–91, 359 P.2d at 458–460; *Holytz v. City of Milwaukee,* supra; *Spanel v. Mounds View School District No. 621,* supra, 118 N.W.2d at 799–802; *Hargrove v. Town of Cocoa Beach,* supra, 96 So.2d at 132–133.

**5.** This is the latest case which has come to our attention. We commend to persons interested the statements on pp. 228–229 of this case, which are not repeated herein for the sake of brevity.

**6.** In light of the fact that Article 1, § 8 of the Wyoming Constitution has possible application to a question of the State's immunity, and the fact that it was not presented by either of the parties hereto, it would be improper for us to consider this question.

■ The final question herein is the application of this decision. The court is fully cognizant that a long reliance has been placed upon the rule of immunity and that it will raise certain problems which must be considered and proper arrangements made. Based upon these considerations, the doctrine of governmental immunity as it is applied to counties and all other similar governmental subdivisions is abolished as to any and all claims arising on and after July 1, 1979. However, this appellant should not be the recipient of a pyrrhic victory but should be allowed to proceed. There is abundant authority as to the propriety of this approach. *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill.2d 11, 163 N.E.2d 89, 97, 86 A.L.R.2d 469, certiorari denied 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900, cited with approval in *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896, 902; *Willis v. Department of Conservation and Economic Development*, 55 N.J. 534, 264 A.2d 34, 37–38; *Kitto v. Minot Park District*, N.D., 224 N.W.2d 795, 804; *Smith v. State*, 93 Idaho 795, 473 P.2d 937, 950; *Holytz v. City of Milwaukee*, supra, 115 N.W.2d at 626. There are at least three reasons given for this result: Unless it is applied to the appealing party the decision is mere dicta; refusal would deprive the successful appellant of the fruits of his time, effort and expense, *Molitor v. Kaneland Community United District No. 302*, supra; and further that the plaintiff should have recovery for the reason that "case law is not likely to keep up with the needs of society if the litigant who successfully champions a cause is left with only that distinction," *Willis v. Department of Conservation and Economic Development*, supra, 264 A.2d at 38.

The judgment in this case dismissing the action against the Board of County Commissioners of Carbon County is hereby reversed and the case remanded for trial thereof pursuant to this holding.

Reversed and remanded.

RAPER and ROSE, JJ., filed specially concurring opinions.

RAPER, Justice, specially concurring.

I concur not only in the result but the reasoning of the court's opinion.

The opinion leaves unsaid, matters of importance. In making that observation, I am not critical of the opinion's author. It is not the function of the court's majority opinion in a case of this sort to go into any more detail than was done. When carefully read, it decides the case as far as possible.

The court's opinion, however, leaves open the solution to its implementation. Whether the legislature realizes it or not, the court has handed that body a problem. At the present time and until July 1, 1979, the law is as stated in *Collins v. Memorial Hospital of Sheridan County*, Wyo.1974, 521 P.2d 1339: the purchase of liability insurance constitutes a waiver of municipal sovereign immunity, at least up to the amount of coverage, even in the absence of specific legislative authority for such a waiver. That case dwells at some length on the subject of insurance and, in footnote 5, quotes favorably from a case of precedential value, wherein it was said, " 'Liability insurance, to the extent that it protects the public funds, *removes the reason for, and thus the immunity to suit.*' " (Emphasis added.) *Thomas v. Broadlands Community Consol. School Dist. No. 201*, 348 Ill.App. 567, 109 N.E.2d 636, 640.

As a result of the *Memorial Hospital* case, some legislative changes were made. It was noted in *Town of Jackson v. Shaw*, Wyo.1977, 569 P.2d 1246, 1256, that § 1–1018.1, W.S.1957, 1975 Cum.Supp., enacted in 1975, a part of Chapter 36, Title 1, W.S. 1957, dealing with "State, State Agencies and Political Subdivisions; Actions by or Against," provided as follows:

"The defense of governmental immunity shall be waived to the extent of the limits of liability insurance carried by the governmental entity. This section shall apply to any governmental body or agency in the state securing liability insurance coverage."

In *Jivelekas v. City of Worland*, Wyo. 1976, 546 P.2d 419, when we were sitting in

a three-judge panel, the writer of the majority proposed abolition of the immunity doctrine, to which the Chief Justice and I disagreed. In my remarks of disagreement, because of the timing of such holding and my view that the legislature should set up a uniform system of handling state tort liability, I made the following remarks:

"'* * * "Whatever that branch does, consideration must be given to the economics of insurance premiums versus appropriated funds." [*Awe v. University of Wyoming*, Wyo.1975, 534 P.2d 97, 107.] It may be more feasible to divert insurance premiums into a state-administered tort liability fund. I think we must take judicial notice of the battle raging in other areas; insurance may not be the cure-all to cover liability and may be getting priced out of the business under its heavy exposure.'"

Only by way of illustration because there are no such facts in this record, it has been mentioned that a county memorial hospital in this state did not renew its liability (malpractice) insurance because of high cost and decided to rest on its immunity. Other governmental entities may have been or are doing the same. It is somewhat an anomaly that there is no reason for the immunity doctrine when insurance is available but when the insurance becomes unavailable the immunity doctrine is no longer in existence. I think I can take judicial notice of insurance problems within the medical profession, extending into the legal profession and to industry in products liability cases.

The legislature followed through suggestions by this court and its members made in various opinions from time to time that there should be legislative action to create a tort claims act. House Bill No. 186 of the Forty-fourth Legislature, 1977 Session, was enacted but vetoed by the governor. It provided for a Wyoming Tort Claims Act for the State and all its political subdivisions. That Act placed heavy emphasis on insurance as a source for satisfaction of valid tort claims.

Perhaps, through the discussions of this court in the past, involving insurance coverage, there may exist some sort of an idea or impression that insurance to satisfy claims is the only device available to the State and its political subdivisions to satisfy claims against them. It is worthwhile to note that in the unanimous opinion of this court in this case there is no requirement that any of the governmental entities mentioned buy insurance to meet tort claims made and approved. I think the court is careful to not dictate compulsory insurance.

Other courses are open, such as self-insurance if, after study, the legislature finds a financial capability of the State to do so, when considered as against the increasing cost of insurance premiums. There could be considered the establishment of a trust fund against which claims could be satisfied.

With respect to political subdivisions, this court recently handed down its decision in *Frank v. City of Cody*, Wyo.1977, 572 P.2d 1106, in which was approved an application of the Wyoming Joint Powers Act, §§ 9–18.13 to 9–18.20, W.S.1957, 1975 Cum.Supp. (now §§ 9–1–129 to 9–1–136, W.S.1977). The feasibility of combining the resources of several political subdivisions to accomplish an end, not within the financial capability of a single political subdivision, was thus established. It is suggested that under appropriate legislative enabling acts, funds presently expended for insurance premiums or some pro rata share could be diverted into a central trust fund for satisfaction of valid tort claims against any of the participating subdivisions.

It must be realized that any suggestions I make should not be construed as a direct or indirect interference with the legislative function. However the legislature handles the problem it faces, as a result of this court's opinion, is eventually its business and must be resolved upon the basis of its investigation and actuarial studies; a comparison of insurance cost to claims paid in a statewide structure. My concern is that it should be understood that I see nothing in the opinion of this court now being handed down nor in any past decisions that marries it to or settles any concept that purchase of

insurance is the sole and only method available to the legislature to make funds available to pay approved tort claims against the State and its political subdivisions; other methods may be more economical and feasible.

While the whole court does not join in saying so, at this point and time, it appears to me that the handwriting is on the wall and the legislature might be well advised to prepare the State and arrange for funding of proper tort claims against it. The court by its opinion is taking immunity away from the county. A county is a unit and arm of State government, by which many functions of state administration are decentralized, such as tax assessment and collection through the county assessor and treasurer; enforcement of the State's laws, through a county sheriff and a prosecuting attorney; supervision of elections through the county clerk; support for the State's judicial system, through the clerks of court and furnishing of court facilities by county commissioners; a local network of roads, forming a part of the State's highway system, through county commissioners; legislative apportionment by county and combinations of counties, etc., etc. The court may have reached the State through the county. I make no advance or advisory determination in that regard and agree that if necessary, in the absence of voluntary action, a future court decision in that regard is the wiser course, the attorney general not being present representing the central State government in this action.

It must be understood that in the expression of the foregoing views, I set out only my individual sentiments and they must not be considered binding as an extension of the court's opinion.

ROSE, Justice, specially concurring.

I concur in the result hereof, which I understand abrogates the concept and defense of governmental immunity, as that doctrine has heretofore applied, with respect to all political subdivisions in the State of Wyoming. In my judgment, however, the opinion should have specifically embraced such abrogation of governmental *and* sovereign immunity as would include the State of Wyoming. As the opinion now stands, the subject of the State's immunity is not precisely considered, even though the language may be broad enough to abrogate the State's sovereign immunity. My views on this subject are sufficiently set forth in *Jivelekas v. City of Worland*, Wyo., 546 P.2d 419, and need not be reiterated here. Suffice it to say that I am unable to recognize any substantive distinction between the so-called doctrines of sovereign and governmental immunity which would justify separate treatment by this court. See, *Muskopf v. Corning Hospital District*, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457; and *Holytz v. City of Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618. Furthermore, as explained in *Jivelekas*, supra, 429–431, Article 1, § 8, Wyoming Constitution, should not prevent such a total abrogation in light of the thrust of that provision and the decisions of this court which have touched and concerned its applicability. Notwithstanding the failure of the majority to speak to the abrogation of the State's immunity in this decision, I am confident that, even if the opinion's scope is not broad enough to include the State, nevertheless, the curtain is slowly but surely falling on this illogical and inexcusable chapter of legal history in Wyoming. Whether the final lines of this tragic drama will be read and acted upon by this court or by the legislature remains to be seen, but in fairness to those who are hurt by the agents of the State but may still be left without a remedy, the day of their relief cannot be far away.