**Leland Dean ADKINS, Plaintiff,**

v.

**SKY BLUE, INC., a Wyoming corporation, Slater Marsh and Joan Marsh, husband and wife, Donna "Spike" Skaj, and Ernest Sheppard, Defendants.**

No. 84–154.

Supreme Court of Wyoming.

May 24, 1985.

J.N. Murdock of Vlastos, Reeves, Murdock & Brooks, P.C., Casper, for plaintiff.

Richard E. Day and Patrick J. Murphy of Williams, Porter, Day & Neville, Casper, for defendants Sky Blue, Inc., Slater Marsh and Joan Marsh; Robert E. Skar, Casper, for defendant Skaj; oral argument by Mr. Day.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

During the evening of May 4, 1982, Christopher Kennedy became intoxicated as a result of drinking liquor at a bar known as "The Lounge." On leaving "The Lounge" that evening he purchased and consumed more liquor before departing Casper, Wyoming. Approximately twenty miles north of Medicine Bow, Wyoming, the automobile being driven by Christopher Kennedy struck plaintiff Leland Adkins's vehicle head-on in Mr. Adkins's lane of travel. Christopher Kennedy was killed, as were his two passengers. Leland Adkins and his passenger suffered personal injuries in the accident resulting in Adkins being left a quadriplegic. Some time after the accident a blood sample, taken from the body of Christopher Kennedy, determined his blood alcohol level to be .11%. Leland Adkins filed suit in the United States District Court for the District of Wyoming against "The Lounge," its owners and employee to recover damages for the personal injuries suffered by him.

The United States District Court found that Adkins's case involved a question of law of the State of Wyoming which might be determinative of the action and that there was no clear and controlling precedent in the decisions of the Supreme Court of the State of Wyoming; it therefore certi-

fied for instruction, pursuant to § 1–13–106, W.S.1977,[1] the following question:

"Do third persons injured by an intoxicated patron of a liquor vendor state a claim for relief against the liquor vendor for causes of action that arose prior to *McClellan v. Tottenhoff,* 666 P.2d 408 (Wyo.1983)?"

We answer the certified question in the negative.

*Parsons v. Jow,* Wyo., 480 P.2d 396 (1971), was handed down by this court February 4, 1971. The accident which is the subject of this certification occurred May 5, 1982, and plaintiff's claim or cause of action arose on that date. *McClellan v. Tottenhoff,* Wyo., 666 P.2d 408 (1983), was decided by the Wyoming Supreme Court June 28, 1983.

In *Parsons v. Jow,* supra, the bar owner sold intoxicating liquor to McCall, a minor, who became drunk and crashed his car into a building. Plaintiff, a passenger in the car at the time, sued the bar owner to recover damages resulting from his personal injuries. The trial court dismissed plaintiff's complaint for failure to state a claim upon which relief could be granted. We affirmed stating that

" * * * it cannot be denied there was no cause of action at common law against a vendor of liquor in favor of one injured by a vendee who becomes intoxicated— this for the reason that the proximate cause of injury was deemed to be the patron's consumption of liquor and not its sale. Our statement in this regard is verified in these cases—[citing cases from Alaska, Arizona, Idaho, Illinois, Maryland, Michigan, Minnesota, Wisconsin, and also citing 45 Am.Jur.2d Intoxicating Liquors § 553 and 48 C.J.S. Intoxicating Liquors § 430].

"Statutes, in a number of states, have changed the common law rule and sub-jected a tavern keeper to liability to a third party, where injury results from the furnishing of intoxicating liquor. The statutes are called civil damage or dramshop acts.

\* \* \* \* \* \*

"The legislature of Wyoming has not seen fit to change the common law rule as it applies in this case. Whether legislation in the nature of a dramshop act or a civil damage statute should be included as part of our liquor control code is within the province of the legislature." Id., 480 P.2d at 397–398.

Thus, the Wyoming Supreme Court issued a clear pronouncement that it would not undertake to adopt a dramshop law by judicial decision but would leave that to the legislature. When the question of liability for sale of liquor to an intoxicated person was next considered in *Snyder v. West Rawlins Properties, Inc.,* 531 F.Supp. 701 (D.Wyo.1982), the United States District Court, relying upon the pronouncements of the Wyoming Supreme Court stated:

"The general rule is that in the absence of a civil damage or dramshop act enacted by the state legislature, the common law provided that no remedy existed against a tavern owner or vendor of liquor for injuries to a [third] party. Wyoming does not have a civil damages or dramshop act." At 701–702.

Thus, as late as February 1982, there was no reason for anyone to suspect that the Wyoming Supreme Court would, at the next opportunity, impose liability upon the vendors of liquor by an overruling decision rather than leaving the matter to the legislature.

*McClellan v. Tottenhoff,* decided June 28, 1983, involved the sale of alcoholic beverage to a minor who became intoxicated and drove a car so as to fatally injure the plaintiff. Without prior warning or sug-

---

**1.** Section 1–13–106, W.S.1977, provides:

"The supreme court may answer questions of law certified to it by a federal court when requested by the certifying court if there are involved in any proceeding before the federal court questions of law of this state which may be determinative of the cause then pending in the federal court, and as to which it appears to the federal court there is no controlling precedent in the existing decisions of the supreme court."

gestion of what was to occur, the court in *McClellan v. Tottenhoff,* supra, stated:

"The rule that there is no cause of action when a vendor sells liquor to a consumer who injures a third party was created by the courts. We see no reason to wait any longer for the legislature to abrogate it. Common law created by the judiciary can be abrogated by the judiciary." *Id.,* 666 P.2d at 411.

■ The common law has served us well because it is flexible, able to grow and meet the requirements of changing conditions and a different society. There are times when change is necessary; but the doctrine of stare decisis is also important in an organized society. Change, therefore, should occur slowly, deliberately after much experience, and if possible so as not to affect vested rights or things in the past. Thus, it is said that:

"[T]he courts may apply or effectuate common law principles in the light of altered or new conditions, and when the circumstances and conditions are different, in that the common law principles are unsuitable to new circumstances or conditions, the needs of society, or in conflict with public policy, the courts may make such changes or modifications as the situation requires." (Footnotes omitted.) 15A C.J.S. Common Law § 13. See, *Irwin v. Coluccio,* 32 Wash.App. 510, 648 P.2d 458 (1982).

Acknowledging that there ought to be an extreme reluctance to change the common law and recognizing the obvious benefits of the doctrine of stare decisis, yet on occasion it does become eminently clear that society has long passed beyond the point where an ancient doctrine remains viable. This court believed it had arrived at that place in deciding *McClellan v. Tottenhoff,* supra—now the law of this state—and in stating:

"We hereby overrule *Parsons v. Jow,* supra.

\*  \*  \*  \*  \*  \*

"*Henceforth,* cases involving vendors of liquor and injured third parties will be approached in the same manner as other negligence cases.

\*  \*  \*  \*  \*  \*

"We hold that a vendor of liquor owes a duty to exercise the degree of care required of a reasonable person in light of all the circumstances." (Emphasis added.) At, 666 P.2d 410–412.

■ The rule of *McClellan v. Tottenhoff,* supra, became effective with the issuance of the court's opinion on June 28, 1983. The accident in which plaintiff was involved and which is the subject of this case, occurred May 5, 1982, more than a year prior to the court's pronouncement in *McClellan v. Tottenhoff.* If the rule announced in *McClellan v. Tottenhoff,* supra, applies prospectively only—that is in the future, *henceforth* and from now on—then plaintiff's case is subject to the common-law rule of nonliability for sellers of intoxicating liquor as stated in *Parsons v. Jow.* And, as was held in *Parsons v. Jow,* it must be dismissed.

Initially it was held that a court issuing an overruling decision had merely discovered and announced existing law; since the overruling case did not create new law, but merely recognized what had always been the law, such law would operate both retrospectively and prospectively:

"'[B]ut the modern decisions, taking a more pragmatic view of the judicial function, have recognized the power of a court to hold that an overruling decision is operative prospectively only and is not even operative upon the rights of the parties to the overruling case. As a matter of constitutional law, retroactive operation of an overruling decision is neither required nor prohibited.'" *Thome v. City of Newton,* 229 Kan. 375, 624 P.2d 454, 458 (1981) (quoting from Anno., Comment Note—Prospective or Retroactive Operation of Overruling Decision, 10 A.L.R.3d 1371, 1378 (1966)).

We have held that

"[t]here is no distinction drawn between civil and criminal litigation; a ruling may be prospective only and it may apply to

the invalidity of statutes *as well as to the effect of a decision overturning long-established common-law rules;* the constitution neither prohibits nor requires retrospective effect and the federal Constitution has no voice upon the subject; and, the accepted rule today is that in appropriate cases in the interests of justice, a court may make its decision prospective." (Emphasis and footnote in original omitted; our emphasis added.) *Ostwald v. State,* Wyo., 538 P.2d 1298, 1303 (1975).

Where an overruling decision announces a change in the common law, some guidelines are set forth in *Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), for whether its operation should be retrospective or prospective only:

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see e.g., *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* supra, 392 U.S. [481], at 496, 88 S.Ct. [2224], at 2233, [20 L.Ed.2d 1231 (1968)], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., *Allen v. State Board of Elections,* supra, 393 U.S. [544], at 572, 89 S.Ct. [817], at 835, [22 L.Ed.2d 1 (1969)]. Second, it has been stressed that 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker,* supra, 381 U.S. [618], at 629, 85 S.Ct. [1731], at 1738, [14 L.Ed.2d 601 (1965)]. Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a

holding of nonretroactivity.'" Id., 92 S.Ct. at 355.

This court has on several occasions considered whether a change in law should operate retrospectively or prospectively. In *Nehring v. Russell,* Wyo., 582 P.2d 67, 80 (1978), we stated that

"* * * the determination is ours to make, [and] we conclude that in consideration of all the factors and any prior reliances involved, our holding should be applied prospectively only, i.e., to this action and all causes of action accruing after 30 days following the date of this decision."

In *Oroz v. Board of County Com'rs of Carbon County,* Wyo., 575 P.2d 1155 (1978), we were faced with the same question and held operation prospective only stating:

"The court is fully cognizant that a long reliance has been placed upon the rule of immunity and that it will raise certain problems which must be considered and proper arrangements made. Based upon these considerations, the doctrine of governmental immunity as it is applied to counties and all other similar governmental subdivisions is abolished as to any and all claims arising on and after July 1, 1979. However, this appellant should not be the recipient of a pyrrhic victory but should be allowed to proceed. There is abundant authority as to the propriety of this approach." At 1159.

It has been repeatedly stated that where a decision might produce substantial inequitable results if applied retroactively, it is appropriate to avoid such hardship or injustice by providing for prospective operation only. *Chevron Oil Company v. Huson,* supra. Vendors of liquor in this state had no reason to suspect that this court would adopt a dramshop-type law placing liability on vendors of liquor. There were no cases following *Parsons v. Jow,* supra, suggesting an imminent change in the law. The court had given its firm assurance in *Parsons v. Jow,* supra, that this was a matter for the legislature. As late as 1982, in *Snyder v. West Rawlins Properties, Inc.,*

supra, the United States District Court, District of Wyoming, reaffirmed the rule of *Parsons v. Jow,* supra, which provided non-liability to third persons injured by an intoxicated patron of a liquor vendor. Liquor vendors had no reason to obtain insurance or otherwise protect themselves against liability that did not exist. Insuring against this kind of broad liability is expensive, and they surely were justified in relying upon the pronouncement of this court in not purchasing insurance coverage.

The public policy of *McClellan v. Tottenhoff* and the purposes to be served by imposing civil liability upon vendors of liquor are to cause them (a) to exercise care in dispensing liquor; (b) to refuse liquor to intoxicated persons or refuse to sell in violation of law; and (c) to provide financial responsibility for negligence. Those purposes are not served or affected by retroactive operation of the law, for the incident complained of had already occurred—nothing could be done to change it. The stated public policy would not be promoted by holding the vendor retroactively liable for damages. We note here also that the legislature, at its 1985 general session, was concerned about this area of the law and enacted legislation on this subject.[2]

It is suggested that the case for prospective operation of the rule of *McClellan v. Tottenhoff* is weak because vendors of alcoholic beverage cannot seriously and in good conscience contend that they violated the liquor laws relying upon *Parsons v. Jow* to escape civil liability. We do not suggest they violated the law relying upon *Parsons v. Jow.* We do suggest they may not have purchased expensive insurance or otherwise obtained financial protection against this newly-created liability in reliance upon *Parsons v. Jow.* That is the reliance of which we speak. With respect to the violation of the liquor laws in reliance upon *Parsons v. Jow,* that is not likely, for severe criminal sanctions are imposed as are procedures resulting in the loss of a liquor license whether by revocation or refusal to renew.

There was no series of cases following *Parsons v. Jow* that suggested or even intimated that the court might overrule *Parsons v. Jow.* The vendors of liquor justifiably relied upon the law as we stated it to be. To hold now that a vendor of liquor, not liable for damages under the law existing at the time of the accident involved nevertheless, a year later, became liable because of a change in the law by an overruling case would be manifestly unfair.

We find comfort in the language of the court in *McClellan v. Tottenhoff* wherein we stated that *"henceforth"* this type of case would be determined upon ordinary negligence principles. It is held that such terms as "hereafter," "thereafter," and

2. Enrolled Act No. 136, effective May 23, 1985, provides:

"AN ACT to create W.S. 12–8–301 relating to alcoholic beverages; limiting liability in some cases of selling or providing alcoholic liquor or malt beverages; providing for exceptions; and providing for an effective date.

*"Be It Enacted by the Legislature of the State of Wyoming:*

"Section 1. W.S. 12–8–301 is created to read:

"ARTICLE 3
"DAMAGES
*"12–8–301 Limitation of liability.*
"(a) No licensee is liable for damages caused by an intoxicated person to whom the licensee legally sold or furnished alcoholic liquor or malt beverages unless the licensee sold or provided alcoholic liquor or malt beverages to a person who was intoxicated, and:
"(i) It was reasonably apparent to the licensee that the person buying or receiving the alcoholic liquor or malt beverage was intoxicated; or
"(ii) The licensee knew or reasonably should have known from the circumstances that the person buying or receiving the alcoholic liquor or malt beverages was intoxicated.
"(b) No person who is not a licensee who has gratuitously and legally provided alcoholic liquor or malt beverage to any other person is liable for damages caused by the intoxication of the other person.
"(c) This section does not affect the liability of the intoxicated person for damages.
"(d) This section does not affect the liability of the licensee or person if the alcoholic liquor or malt beverage was sold or provided in violation of title 12 of the Wyoming statutes.
"(e) For purposes of this section 'licensee' is as defined in W.S. 12–1–101(a)(viii) and includes the licensee's employee or employees."

."shall be" speak to prospective operation. 82 C.J.S. Statutes § 413. Henceforth is in the same category. It is defined as:

"A word of futurity, which, as employed in legal documents, statutes, and the like, always imports a continuity of action or condition from the present time forward, but excludes all the past." Black's Law Dictionary (5th ed. 1979).

We, therefore, hold that the rule of *McClellan v. Tottenhoff*, supra, applies prospectively only, to claims or causes of action that accrue after the date of its publication, to wit, June 28, 1983.

BROWN, Justice, dissenting.

In holding that *McClellan v. Tottenhoff*, Wyo., 666 P.2d 408 (1983), has only prospective application, the majority bases its decision on language in the *McClellan* case, and the notion that vendors of liquor relied on *Parsons v. Jow*, Wyo., 480 P.2d 396 (1971) to insulate them from civil liability in the illegal sale of liquor. Neither of these reasons is valid. One is based on grammatical parsing; the other, even if true, is totally unjustified.

In *McClellan*, the court said:

" * * * Henceforth, cases involving vendors of liquor and injured third parties will be approached in the same manner as other negligence cases." Id., at 411.

This quotation is subject to more than one interpretation. The majority says it means that claims or causes of action which accrue after June 28, 1983, will be governed by the principles of *McClellan*, and that claims or causes of action which accrued before June 28, 1983, will be governed by prior law, that is, *Parsons v. Jow*, supra.

The quotation, however, could also be reasonably interpreted to mean that claims or causes of action not barred by the statute of limitations will "henceforth" be treated as other negligence cases. The result in *McClellan* did not mean that a cause of action against vendors of liquor could not accrue until after June 28, 1983.

The word "henceforth" is perhaps ambiguous in the context of the problem before this court. It should be treated as a neutral word. It would, perhaps, have been proper for this court to address the issue of retroactivity in *McClellan*, but it did not. Ordinarily the supreme court will not decide questions not requisite to adjudication. *Reno Livestock Corporation v. Sun Oil Company*, (Delaware), Wyo., 638 P.2d 147 (1981). If this court had intended to rule on retroactivity in the *McClellan* case, I assume .it would have done so in clear terms, and not by dropping a hint with the use of one word.

Other principles should therefore be employed to determine if *McClellan v. Tottenhoff* is to be applied prospectively only. There is no clear prohibition in *McClellan* against retrospective application nor is there a clear mandate requiring only prospective application. The general rule is that, in civil cases, decisions are to be applied retroactively.

The Tenth Circuit Court, sitting en banc, stated the rule thusly:

"The general rule, of course, is that retroactive effect is given to decisions overruling a prior holding. * * * " *Benedict Oil Company v. United States*, 582 F.2d 544 (10th Cir.1978).

The court in *Sunray Oil Company v. Commissioner of Internal Revenue*, 147 F.2d 962, 963–964 (10th Cir.1945)), cert. denied. 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982 (1945), also stated the general rule:

" * * * It is a general rule that the decision of the highest appellate court of a jurisdiction overruling a former decision is retrospective in its operation * * *."

Other courts abide by this rule:

"In actions involving purely civil matters, the law of the state of Arizona has always been that unless otherwise stated, a court opinion operates retroactively as well as prospectively. [Citations.] There is, then, a presumption that opinions by appellate courts of this state are retroactive as well as prospective." *Chevron Chemical Company v. Superior Court*, 131 Ariz. 431, 641 P.2d 1275, 1279–1280 (1982).

In *Malan v. Lewis*, Utah, 693 P.2d 661, 676 (1984), the court stated:

"The *general rule* from time immemorial is that the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively. In civil cases, at least, constitutional law neither requires nor prohibits retroactive operation of an overruling decision, [Citations] but in the vast majority of cases a decision is effective both prospectively and retrospectively, even an overruling decision. [Citations.] Whether the *general rule* should be departed from depends on whether a substantial injustice would otherwise occur. [Citation.]" (Emphasis added.)

See also, *International Studio Apartment Association, Inc. v. Lockwood*, Fla.App., 421 So.2d 1119 (1982); *In re Kloppenberg's Estate*, 82 N.J.Super. 117, 196 A.2d 800 (1964); *Marshall v. Marshall*, Tenn., 670 S.W.2d 213 (1984).

These cases, of course, are not without exception:

"Although there is a traditional general rule in favor of giving retroactive effect to an overruling decision, it has become recognized that this rule is subject to various exceptions, for example, where there has been justifiable reliance on decisions which are subsequently overruled and those who have so relied may be substantially harmed if retroactive effect is given to the overruling decision * *." Annot., 10 A.L.R.3d 1384 (1966).

The case before us, however, is the weakest case imaginable for an exception from the general rule. How can vendors of alcoholic beverages seriously and in good conscience contend that they violated the liquor laws, relying on *Parsons v. Jow* to escape civil liability?

*Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983), has elements of both the case before us and the *McClellan* case. In *Brannigan*, the surviving parents of minor passengers and the driver killed in an automobile accident brought a wrongful death action against tavern operators for negligently furnishing liquor to the dece-dents. The court en banc held, among other things, that where violation of a statute pertaining to furnishing liquor to those who are underage or who are already intoxicated is shown, negligence exists as a matter of law and the rule may be retroactively and prospectively applied. The court reasoned, citing *Chevron Chemical Company v. Superior Court*, 131 Ariz. 431, 641 P.2d 1275 (1979):

"*In Chevron Chemical Co.*, supra, we applied the three-part test set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), to determine if this presumption of retroactivity had been overcome and if a decision should apply only prospectively.

" 'That test suggests that in order for an opinion to have prospective application only, the opinion (1) must have established a new legal principle by either overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed; (2) must affect adversely the purpose behind the rule in question, and (3) must produce substantial inequitable results if applied retroactively.' *Chevron Chemical Co.*, supra.

"In applying the first factor of the test, we acknowledge that today's decisions overrule clear precedent. We believe, however, that this result was certainly foreshadowed. There has been a continued assault upon the common law rule in a line of cases * * *. [T]he trend of authority in other states and the continued progression of dram shop cases through the Arizona courts certainly should have alerted all but the most complacent to the danger that the rule would eventually be changed and that they, like most others, would become civilly liable for violating the law.

"With respect to the second factor, we do not find that the change in the law adversely affects the underlying purpose for the law. Removing the rule of nonliability would probably have a neutral effect on tort principles, and could possi-

bly be viewed as furthering the underlying purpose of providing compensation for negligently inflicted injuries.

"Finally, we do not believe substantial inequitable results will be produced by retroactive application. Defendants, and all others in the liquor business, have never been entitled to rely upon the lack of civil liability. The acts for which defendants are now being subjected to civil liability have long been criminal. Defendants cannot complain, therefore, that they are being made to pay for conduct which, under prior law, was held proper. Further, and most important, is the question of relative fault. In those cases in which defendants have furnished liquor to minors or intoxicated persons, they have been guilty of a crime. Many of those who have been injured are blameless. * * * In the probable majority of cases, of course, the question comes simply to choosing between a defendant whose past conduct violated the law and a victim, relatively blameless, who has been injured or killed. Retrospective application favors the latter and prospective favors the former." *Brannigan v. Raybuck*, supra, 667 P.2d at 220–221.

In *Ostwald v. State*, Wyo., 538 P.2d 1298 (1975), we approved a three-prong test to be employed in determining whether a decision should be prospective or retroactive. The test is (1) the purpose to be served by the new standards; (2) the extent of reliance on the old standards; and (3) the effect on the administration of justice of a retrospective application of the new standards. We also said that in determining whether a decision should be retrospective or prospective that "there is no distinction drawn between civil and criminal litigation." Id., at 1303. The reasoning employed by the Arizona Supreme Court to justify its determination that its decision in *Brannigan v. Raybuck*, supra, should be retroactive is applicable in all respects to the case before us, and satisfies the three-prong test approved by this court in *Ostwald*.

The majority cites *Nehring v. Russell*, Wyo., 582 P.2d 67 (1978), and *Oroz v. Board of County Commissioners of Carbon County*, Wyo., 575 P.2d 1155 (1978), in support of its decision that *McClellan* should only apply prospectively. Those cases are not authority for the problem here, because they specifically provide for prospective application only.

In recent years, at least, when we have intended that a decision be given prospective application only, we have said so. In the *Oroz* case we ruled on the retroactivity of governmental immunity. In making our decision prospective only, we held:

"This Court is fully cognizant that a long reliance has been placed upon the rule of immunity in that it will raise certain problems which must be considered and proper arrangements made. Based upon these considerations, the doctrine of governmental immunity as it applies to counties and all other similar governmental subdivisions is abolished as to any and all claims arising on and after July 1, 1979." 575 P.2d at 1159.

Similarly, in the *Nehring* case, we abrogated the guest statute. In so doing, we specifically held:

" * * * Further, cognizant that the determination is ours to make, we conclude that in consideration of all the factors and any prior reliances involved, our holding should be applied prospectively only, i.e., to this action and all causes of action accruing after 30 days following the date of this decision. [Citations.]" *Nehring v. Russell*, supra, 582 P.2d at 80.

In *Washakie County School District No. One v. Herschler*, Wyo., 606 P.2d 310, 340 (1980), when intending that our decision be given prospective application only, we made a specific finding that the "relief granted and direction of the court's opinion * * * are prospective."

In the *McClellan* case, no such specific finding was made. In Tottenhoff's motion for rehearing, she made a strong argument for only prospective application of the deci-

sion. After "careful consideration" of her motion, we denied same.

Both the majority and this dissent strive mightily albeit circuitously to arrive at divergent views. Both argue that logic, precedent, and justice support their position. Both avoid the real basis of how the decision was made or, from the dissent's view, should have been made.

" * * * [M]ost courts now treat the question of how an overruling decision should operate as one of judicial policy rather than of judicial power, and recognize that varying results may be reached, depending on the particular circumstances presented and the particular rule affected." Annot., 10 A.L.R.3d 1378 (1966).

I would hold that *McClellan* should be applied retroactively as well as prospectively.