AT & T COMMUNICATIONS OF THE MOUNTAIN STATES, INC., and American Telephone and Telegraph Company–Interstate Division, Appellants (Petitioners),

v.

STATE BOARD OF EQUALIZATION, consisting of Shirley Wittler, Chairman; Carrol Orrison, Deputy Chairman; and Tom Trowbridge, Appellee (Respondent).

No. 88–187.

Supreme Court of Wyoming.

Feb. 1, 1989.

John A. Sundahl of Godfrey, Sundahl & Jorgenson, Cheyenne, Stephen D. Goodwin of Laughlin, Halle, Gibson & McBride, Memphis, Tenn., James P. Kratochvill and Robert A. Maynes, Basking Ridge, N.J., for appellants.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., and Robert J. Walters, Asst. Atty. Gen., Cheyenne, for appellee.

Before CARDINE, C.J., THOMAS, MACY and GOLDEN, JJ., and ROONEY, Retired J.

ROONEY, Retired Justice.

This appeal is from an order of the district court dismissing appellants' petition for review of a decision of appellee, State Board of Equalization. Such decision denied appellants' challenge to the ad valorem property tax assessment of its property for the year 1985 at a percentage of 16.5, a percentage substantially higher than that applied to the property of other taxpayers. The challenge was made on the basis of a violation of the uniformity requirement of the Wyoming Constitution.

We reverse and remand to the agency.

Appellants state the issues on appeal as:
"1. WERE THE AD VALOREM TAX ASSESSMENT PRACTICES EMPLOYED BY THE STATE IN 1985 ANALOGOUS TO THE PRACTICES EMPLOYED BY THE STATE IN 1987 WHICH WERE HELD BY THIS COURT IN *ROCKY MOUNTAIN OIL AND GAS ASSOCIATION v. THE STATE BOARD OF EQUALIZATION*, 749 P.2d 221 (Wyo.1987) (*'RMOGA'*) TO HAVE VIOLATED THE UNIFORMITY REQUIREMENT OF THE STATE CONSTITUTION?
"2. IS THE REMEDY FOR SUCH A VIOLATION, UPON COMPLAINT OF AN INDIVIDUAL TAXPAYER WHO PROVES HIS ASSESSMENT WAS DISPROPORTIONATE AND EXCESSIVE, A REDUCTION IN THE LEVEL OF ASSESSMENT TO A UNIFORM LEVEL?
"3. DOES THIS COURT'S DECISION IN *RMOGA* FORECLOSE RELIEF FOR APPELLANTS BY WAY OF A REDUCTION IN THEIR NONUNIFORM, AND THEREFORE ILLEGAL, 1985 AD VALOREM TAX ASSESSMENTS?
"4. IF THIS COURT'S DECISION IN *RMOGA* DOES NOT FORECLOSE SUCH RELIEF, IS IT APPROPRIATE THAT RELIEF FOR 1985 SHOULD BE DENIED ON THE THEORY THAT IT WOULD BE INEQUITABLE TO APPLY RELIEF 'RETROACTIVELY?'"

Appellee acknowledges on affirmative answer to the first issue presented by appellants, and it states the issues on appeal as:
"1. IN LIGHT OF THE LIMITED SCOPE OF AN ADMINISTRATIVE PROCEEDING UNDER W.S. 39–2–201(d) AND THE FAILURE OF APPELLANTS TO RAISE THEIR CONSTITUTIONAL OBJECTIONS IN THE APPROPRIATE FORUM, IS THE BOARD'S ORDER VIOLATIVE OF ANY OF THE JUDICIAL REVIEW CRITERIA OF W.S. 16–3–114(c)?
"2. UNDER ANY CIRCUMSTANCES, SHOULD THE COURT GRANT THE APPELLANTS RETROSPECTIVE RELIEF IN LIGHT OF THE COURT'S PURELY PROSPECTIVE REMEDY IN *ROCKY MOUNTAIN OIL AND GAS ASSOCIATION v. STATE BOARD OF EQUALIZATION?*"

## RETROSPECTIVE RELIEF

■ Although appellee accepts the 1985 assessment of appellants' property to have been in violation of the uniformity requirement of the state constitution pursuant to our holding in *Rocky Mountain Oil and Gas Association v. State Board of Equalization*, 749 P.2d 221 (Wyo.1988) (hereinafter referred to as *"RMOGA"*), it points to the following language on page 244 thereof relative to the date set by the court for application of the court-determined assessment ratio of 11.5%, i.e., March 15, 1988, unless the legislature earlier chooses to act:

"However, this court does not choose to move precipitously, and determines only that its action will be prospective as applied to the taxation year of 1988 * * *."

Appellee asserts that relief to appellants in this case is thereby precluded as being retrospective.

Pursuant to W.S. 39–2–201(a)(vi) and W.S. 39–2–201(d),[1] appellee valued appel-

---

1. W.S. 39–2–201 provides in pertinent part:
   "(a) The board shall annually value the following property for taxation:

* * * * * *

lants' property for the year 1985. On June 20, 1985, appellants timely[2] filed written objections to the assessment,[3] requesting a reduction in it and a hearing. On December 30, 1987, the petition for review of a December 31, 1986 action of the Ad Valorem Tax Division and of appellee was filed in the district court in the *RMOGA* case. On March 6, 1987, appellee held the requested hearing in this case. Since the parties had entered into a joint stipulation of facts, the facts were not in dispute.[4] On May 19, 1987, appellee filed the Findings of Fact, Conclusions of Law and Order in this case. On June 18, 1987, appellants timely[5] filed their petition for review by the district court. Both cases were then before the district court. On August 10, 1987, the district court certified[6] the *RMOGA* case to this court, and this court issued the *RMOGA* opinion on December 31, 1987. Then, on May 31, 1988, the district court dismissed appellants' petition for review of this case.

The most obvious reason that this action is not precluded by the above-quoted statement of this court in the RMOGA case relative to the prospective application of the opinion is the language of the statement itself. It recites that such application was to be "as applied to the taxation year of 1988." Regardless of the institution of the *RMOGA* case or of its holding, the tax assessments for 1987 and previous years could not be contested by a taxpayer who had not filed written objections thereto as required by W.S. 39–2–201(d) (see note 1, supra) or who had not requested court review of appellee's action as required by W.R.A.P. 12.01 (see note 5, supra). Except for cases already pending, the only taxable year subject to contest *based on the precedent of the RMOGA opinion* was 1988. The *RMOGA* opinion set the assessment ratio for 1988 subject to possible adjustment by the legislature. The designation of "the taxation year of 1988" was in this context, i.e., not to allow other contests to the 1988 assessments. A challenge to tax assessments in previous years which had been timely and properly instituted and continued according to statutory and rule requirements was not precluded by the language of *RMOGA*.

It would not be fair or equitable to have a right of appellants, as established by law

"(vi) Property of telephone and telegraph companies which have more than two thousand dollars ($2,000.00) in assessed value;

\* \* \* \* \* \*

"(d) Following determination of the taxable value of property subject to subsection (a) of this section, the board shall notify the taxpayer of the value assessed by mail. The person assessed may file written objections to the assessment within fifteen (15) days following receipt of notice and appear before the board at a time specified by the board."

2. The first Conclusion of Law in that Findings of Fact, Conclusions of Law and Order on which this appeal is generated provides:
"1. Petitioners timely filed their objections to the valuation of their taxable property as determined by the Ad Valorem Tax Division in accordance with W.S. 39–2–201(d)."

3. Appellants' objection was to the amount at which their property was valued and to the ratio of 16.5 percent applied to that value. On July 14, 1986, the parties entered into a partial settlement whereby the value of the property was reduced from $73,500,000 to $64,680,000, leaving only the issue concerning the propriety of the ratio for determination at the hearing.

4. The only additional evidence received at the hearing was (1) a letter exhibit from a representative of appellants confirming acceptance of

the stipulation—the stipulation was signed by the attorney for appellant and by an assistant attorney general representing the Ad Valorem Tax Division of the state—and (2) an exhibit consisting of a statistical compilation of residential sales made since enactment of the Real Estate Disclosure Law for the purpose of supplying a factual basis for the statement in the stipulation relative to disparity of valuation of residential properties.

5. W.R.A.P. 12.01 provides that judicial review of an administrative action by a district court shall be as provided in Rule 12. W.R.A.P. 12.04 provides in pertinent part:
"[T]he petition for review shall be filed within thirty (30) days after written, certified notice to all parties of the final decision of the agency \* \* \*."

6. RMOGA came to this court on certification from the district court pursuant to W.R.A.P. 12.09. W.R.A.P. 12.09 provides in pertinent part:
"If after such review, the district court concludes the matter to be appropriate for determination by the Supreme Court, the district court may certify the case to the Supreme Court."

and rule, be subject to termination simply because another case is first placed or reached on the court's docket or because appellee chose to first hold a hearing on a case filed subsequent to that of appellants. A similar conclusion was reached in *Adkins v. Sky Blue, Inc.*, 701 P.2d 549 (Wyo.1985) (hereinafter referred to as *"Adkins"*). The United States District Court for the District of Wyoming had there certified the following question to this court:

"Do third persons injured by an intoxicated patron of a liquor vendor state a claim for relief against the liquor vendor for causes of action that arose prior to *McClellan v. Tottenhoff*, 666 P.2d 408 (Wyo.1983)?"

Id. at 550.

In *McClellan v. Tottenhoff*, 666 P.2d 408 (Wyo.1983) (hereinafter referred to as *"McClellan"*), this court overruled its holding in *Parsons v. Jow*, 480 P.2d 396 (Wyo.1971) (hereinafter referred to as *"Parsons"*). The *Parsons* case had followed the common law and refused relief to one injured by an intoxicated person who had purchased liquor from the defendant bar owner. The opinion in the *Parsons* case was issued February 4, 1971. This court said in *Adkins*, 701 P.2d at 551:

"The rule of *McClellan v. Tottenhoff*, supra, became effective with the issuance of the court's opinion on June 28, 1983. The accident in which plaintiff was involved and which is the subject of this case, occurred May 5, 1982, more than a year prior to the court's pronouncement in *McClellan v. Tottenhoff*. If the rule announced in *McClellan v. Tottenhoff*, supra, applies prospectively only—that is in the future, *henceforth* and from now on—then plaintiff's case is subject to the common-law rule of nonliability for sellers of intoxicating liquor as stated in *Parsons v. Jow*. And, as was

held in *Parsons v. Jow*, it must be dismissed."

Accordingly, the question certified in the *Adkins* case was answered in the negative.

Of course, the major difference between *McClellan* and *RMOGA* is the fact that *McClellan* changed the existing law in overruling *Parsons*, whereas *RMOGA* simply stated the law as it always has been, i.e., the state constitution required taxes to be assessed uniformly and equally.[7]

In *Adkins*, 701 P.2d at ·553, the court stated that it found "comfort" in the language in *McClellan*

"wherein we stated that 'henceforth' this type of case would be determined upon ordinary negligence principles. It is held that such terms as 'hereafter,' 'thereafter,' and 'shall be' speak to prospective operation. 82 C.J.S. Statutes § 413. Henceforth is in the same category."

Certainly, the words of *RMOGA*, 749 P.2d at 244:

"this court['s] * * * action will be prospective as applied to the taxation year of 1988 * * *"

is as specific and determinative as "henceforth."

In *Adkins*, 701 P.2d at 554, the court concluded:

"We, therefore, hold that the rule of *McClellan v. Tottenhoff*, supra, applies prospectively only, to claims or causes of action *that accrue after the date of its publication*, to wit, June 28, 1983." (Emphasis added.)

■ The determination relative to the prospective or retroactive scope of an opinion is that of the court. *Nehring v. Russell*, 582 P.2d 67 (Wyo.1978); *Oroz v. Board of County Commissioners of Carbon County*, 575 P.2d 1155 (Wyo.1978); *Ostwald v. State*, 538 P.2d 1298 (Wyo. 1975). The court exercised such determination in *RMOGA* by directing its application

---

**7.** Justice Thomas pointed out in his concurring opinion in *RMOGA* that its holding had been predictable at least since *Bunten v. Rock Springs Grazing Association*, 29 Wyo. 461, 215 P. 244 (1923). In *Bunten*, the ad valorem tax procedure was considered at length by Justice Blume. At 215 P. page 251, he noted that a departure

from assessment at a uniform rate would violate the uniformity requirement of the constitution, and that "[s]uch discrimination may arise in various ways, for instance, by the adoption of a wrong or illegal rule, principle or method * * *."

to be "prospective as applied to the taxation year of 1988." Such limitation does not apply to this matter which was timely instituted over a year before RMOGA was instituted and which was timely processed since it was instituted and which pertains to the taxable year of 1985.

Finally, with reference to retrospective relief as it applies to this case, it is emphasized that the *RMOGA* issues, i.e., those pertaining to the ad valorem tax assessments as being in violation of the uniformity requirement of the state constitution, are not contested issues in this case.[8] Accordingly, we are not here concerned with res judicata or collateral estoppel.

### PROPRIETY OF REVIEW OF APPELLEE'S ORDER

■ Appellee first argues that our review in this case should be directed to ascertain whether or not there was substantial evidence introduced at the hearing to support the findings there made. The only evidence consisted of that contained in a joint stipulation. Appellee did not have to make a determination between conflicting facts. The stipulation contained ample data reflecting a 1985 assessment of appellants' property at a percentage substantially in excess of that applied to property of other taxpayers. Appellee has acknowledged the lack of uniformity in the assessment. (See note 8, supra.)

Appellee's second argument on this issue is that a challenge to the assessment ratio, including its constitutionality, can only be taken from the action (rule) setting the ratio, and that the only challenge available at a hearing pursuant to W.S. 39–2–201(d), as here, is to the "factual application of a particular assessment methodology."

Appellee points to the three-to-two opinion by this court in *Wyoming Board of Equalization v. State ex rel. Basin Electric Power Cooperative,* 637 P.2d 248 (Wyo.1981) (hereinafter referred to as *"Basin"*) in support of its argument. The reasoning in Basin may be flawed, but it is

not necessary to override Basin in order to conclude as we do here. The two cases are easily distinguished.

The challenge in *Basin* was to an assessment made pursuant to the following rule adopted by appellee.

"Beginning with tax year 1980, the level of assessment for electric utilities under construction is the use of twenty percent (20%) multiplier times the installation cost."

*Id.* at 249.

The challenge in this case is not to any properly adopted rule of appellee. The only properly adopted rule pertaining to the 1985 assessment of appellants' property provided:

"[T]he Board in accordance with W.S. § 39–1–304(a), Cum. supp. 1984, will review its own assessments of property and may make adjustment to accomplish the equalization goals expressed in Chapter IX, Section 2 above."

The ultimate goal referred to is the laudable one of making the taxes uniform as required by the constitution. The "plan," however, was to reach the ultimate goal by reducing the lack of uniformity over a span of several years. *RMOGA* held that the lack of constitutional mandated tax uniformity in the interim before the ultimate goal of the plan was reached was unlawful. The 1985 assessment ratio fixed by appellee pursuant to the "plan" is that here challenged by appellants. The above-quoted rule under which the plan was implemented could not be challenged. The rule itself did not set a ratio. Under it, appellee could be expected to *immediately* adjust the ratios for all property to a uniform amount. There could be no challenge to a rule in which such is the obvious anticipation. But the ratios used by the appellee in making the adjustment referred to in the rule were not constitutionally uniform. They were established without benefit of the rule-making process and opportunity for judicial review. Appellants made use

---

8. Appellee so acknowledged in oral argument, and it did not address the issue in its brief or in   oral argument.

of the only procedure available to protect their property interest by making the objection to the assessment and asking for a hearing.[9] By affording appellants the requested hearing on the challenge to the assessment ratio, appellee acted contrary to its argument on this issue. It recognized the necessity of affording a hearing to a taxpayer protesting an assessment. See *Paradise Valley Country Club v. Wyoming State Board of Equalization*, 748 P.2d 298 (Wyo.1988).

Contrary to the situation in *Basin*, appellants' challenge was here taken to the assessment ratio set by appellee other than by rule. It was proper and timely.

Accordingly, and contrary to appellee's contention, this matter is properly before this court under the review criteria of W.S. 16–3–114(c). It provides:

"To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

## REMEDY

The result reached by the appellee in the hearing on this matter and the dismissal by the district court of appellants' petition for review are reversed, and this matter is remanded to the appellee, Board of Equalization, with instructions (1) to set the ratio for assessment of appellants' property for the taxable year of 1985 at 11.5%; (2) to certify such ratio and the valuation as changed through the joint stipulation (see note 3, supra) to the affected counties for correction of the assessment of appellants' 1985 ad valorem taxes; and (3) to refund or credit appellants' account[10] with the amount of tax overpayment.

It is not necessary to here repeat the difficult considerations set forth in RMOGA relative to court establishment of taxation ratios. The 11.5% ratio to be used in computing appellants' 1985 taxes results from that which caused the court to designate it in RMOGA. It is also recognized that appellee used the 11.5% ratio in 1985 for assessment of the properties of electric companies, airlines, and radio-telephones (RCC's) at the same time as it used the 16.5% ratio for appellants' property which generated this appeal. Appellee also set the ratio for property of natural gas and liquid gas pipelines at 11%, and that for railroads at 10.5%. These settings were made as adjustments to the original November 1984 plan "to purportedly achieve uniformity of all assessed values by 1987." Following are the assessment percentages and valuation bases of that plan prior to adjustments:

---

9. The due process clauses of the United States Constitution and Wyoming Constitution require the availability of a hearing when a protected property interest is involved. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

10. The record does not reflect whether or not, at the time appellants objected to the assessment, funds were reserved or placed in escrow pending resolution of the objection.

| | 1985 | 1986 | 1987 | Appraisal Base |
|---|---|---|---|---|
| Non-agricultural Land and Lots | 8.0% | 9.2% | 10.6% | Current Value |
| Buildings and improvements | 25.0% | 28.8% | 10.6% | 1967 Base 85 & 86 Current Value 87 |
| Personal Property | 12.8% | 10.9% | 10.6% | Current Value |
| Natural Gas Pipeline | 10.2% | 10.6% | 10.6% | Current Value |
| Major Utilities | 13.3% | 11.3% | 10.6% | Current Value |
| Liquid Pipeline | 10.2% | 10.6% | 10.6% | Current Value |
| Telephones | 18.9% | 16.0% | 10.6% | Current Value |
| Airlines | 12.3% | 10.6% | 10.6% | Current Value |
| Railroads | 8.3% | 9.5% | 10.6% | Current Value |
| REA's—Co-Ops | 12.1% | 10.6% | 10.6% | Current Value |
| Municipal Electric | 11.0% | 10.6% | 10.6% | Current Value |
| Radio—Telephone | 11.0% | 10.6% | 10.6% | Current Value |
| Agricultural Land | 8.0% | 9.2% | 10.6% | Productive Value |
| Large Industrial Facilities | 8.3% | 9.5% | 10.6% | Current Value |
| Miscellaneous | 11.1% | 10.6% | 10.6% | Current Value |

If appellee had not adjusted the percentages for seven of the categories in the original "plan," we could use the 10.6% ratio as that determined by appellee to be necessary for uniformity. Since adjustments were made to the 1985 percentages, albeit not to all categories of property, it would not be appropriate to accept appellee's projection as accurate or even to consider it in the nature of estoppel.[11]

Reversed and remanded to the agency.

---

11. Of interest is the fact that if the 1985 adjustments to the selected categories (other than the telephone category) were carried to the 1986 and 1987 projections, the 10.6% projection for such categories in 1987 would be 11.5%. The record does not reflect whether it was contemplated that the seven already-adjusted categories would be again adjusted to make a uniform ratio of 10.6% by 1987 or whether it was contemplated to adjust the other categories to a 1987 uniform ration of 11.5%.