# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 3

### OCTOBER TERM, A.D. 2012

### January 9, 2013

STEPHEN SMITH and AUDREY
SMITH, husband and wife,

Appellants
(Plaintiffs),

v.

BOARD OF COUNTY
COMMISSIONERS OF PARK
COUNTY, WYOMING

Appellee
(Defendant).

S-12-0103

*Appeal from the District Court of Park County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellants:*
S. Joseph Darrah of Darrah Law Office, P.C., Powell, Wyoming.

*Representing Appellee:*
Larry B. Jones and William L. Simpson of Simpson, Kepler & Edwards, LLC The Cody, Wyoming division of Burg Simpson Eldredge Hersh and Jardine, P.C. Argument by Mr. Jones.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**VOIGT, Justice.**

[¶1]    The Smiths contend that an unlawful taking occurred when the Board of County Commissioners of Park County (the Board) declared the Smiths' private driveway to be part of a county road.  Failing to obtain any relief through administrative proceedings, the Smiths sued the Board in district court, alleging claims of inverse condemnation under Wyo. Stat. Ann. § 1-26-512 (LexisNexis 2011), inverse condemnation under article 1, sections 32 and 33 of the Wyoming Constitution, trespass, and ejectment.  The district court granted summary judgment to the Board on all of the Smiths' claims, concluding that the inverse condemnation claims were barred by the statute of limitations found in the Wyoming Governmental Claims Act (WGCA), Wyo. Stat. Ann.  §§  1-39-101 to -121 (LexisNexis 2011), and that the trespass and ejectment claims failed as a matter of law because the Smiths no longer had sufficient possessory interest to make those claims.

[¶2]    With due respect for the doctrine of *stare decisis*, but recognizing its limitations, we will reverse the district court's grant of summary judgment as to the inverse condemnation claims.  The Smiths have not pursued their claims for trespass and ejectment in this appeal.

## ISSUE

[¶3]    Does the statute of limitations found in the WGCA govern in inverse condemnation cases?

## FACTS

[¶4]    The Smiths live on rural ranch land in Park County, Wyoming.  They have always considered their access road to be a private driveway.  In January 2006, the Smiths' neighbors to the north, Scott and Marjory Justice, filed with the Board a Petition for Establishment of a County Road,  along an unsurveyed legal description that closely equated to the Smiths' driveway.

[¶5]    The Board held an informal meeting on February 21, 2006, to discuss the Justices' petition.  At that meeting, the Board voted to appoint a  viewer to determine the practicality of the proposed road.  The viewer's report presented on April 3, 2006, indicated that "no significant reason appears to hinder Park County from proceeding with the process to establish this section of County Road  R.O.W."   On May 17, 2006, however, the Board dismissed the Justices' petition on the ground that the Smiths' driveway already was part of County Road 11, which had been established in 1902.

[¶6]    The gravamen of the Smiths' disagreement with the Board is stated succinctly in paragraph 25 of their Complaint:

1

25. The location of the Plaintiffs' driveway is quite different from the location of County Road 11 depicted on the 1911 Count[y] Road Plat map which is the official current record map recorded in the Office of [t]he Park County Clerk. Plaintiffs['] private driveway is at least a quarter of a mile away from County Road No. 11 at places, and runs across different parcels of land than County Road No. 11 [a]s clearly depicted on the official County Road Plat map.

[¶7]  After reading in the newspaper of the Board's action, the Smiths sought a reconsideration of the decision.  The Board discussed the matter at a general meeting on September 5, 2006, and declined the Smiths' request.  The Smiths then filed a Petition for Judicial Review in the district court, challenging the Board's authority to create a county road at a new location without following the provisions of Wyo. Stat. Ann. §§ 24-3-101 to -127 (LexisNexis 2011), which statutes govern the procedures for the establishment, vacation, or alteration of county roads.  On February 25, 2008, the district court remanded the matter to the Board for the purpose of conducting a survey of the existing county road to determine whether the Smiths' driveway was, or was not, contained within the county road right-of-way.

[¶8]  Upon remand, rather than do as the district court ordered, the Board simply appointed a second viewer to view the Smiths' driveway.  Without obtaining a survey of either the driveway or County Road 11, the Board declared that the driveway was part of the county road in that the former was "close" to the latter, and in that the 1902 survey of the county road likely was inaccurate on the county plat map.  The Smiths then filed in the district court a Petition for Review of Agency Action.  After a hearing on December 10, 2009, the district court again remanded the matter to the Board, ruling that the Board should follow the statutory procedures for establishing, altering, or vacating a county road, specifically to include a survey of the Smiths' driveway.

[¶9]  Rather than obtain a survey of the Smiths' driveway, the Board hired an expert, who determined that the 1902 survey used to create County Road 11 on the county's official county road plat map was in fact correct.  On December 18, 2009, the Smiths met with representatives of the county attorney's office and with the Board's expert to discuss the expert's conclusions.  The Smiths took the position that, if the 1902 survey of the county road was accurate, as the expert had established, their private driveway was not part of the county road because the two roadways were in different locations.  Some time later, the county attorney informed the Smiths' attorney that the Board did not intend to

change its position that the Smiths' driveway was part of the existing county road. This lawsuit followed.[1]

## STANDARD OF REVIEW

[¶10]  Our standard for the review of a summary judgment is so well known that it need not be repeated here. *See, e.g., Knapp v. Landex Corp.*, 2006 WY 36, ¶ 7, 130 P.3d 924, 926 (Wyo. 2006); and *Ahrenholtz v. Laramie Econ. Dev. Corp.*, 2003 WY 149, ¶ 16, 79 P.3d 511, 515 (Wyo. 2003).  The question of the application of the WGCA to claims of inverse condemnation involves statutory construction, which is a question of law that we review *de novo*. *State ex rel. Wyo. Dep't of Revenue v. Hanover Compression, LP*, 2008 WY 138, ¶ 8, 196 P.3d 781, 784 (Wyo. 2008).

## DISCUSSION

[¶11]  In its answer to the Smiths' Complaint, the Board asserted the following affirmative defenses:

> 2.  Plaintiffs have failed to comply with the Wyoming Governmental Claims Act, W.S. § 1-39-101, *et seq.* (LexisNexis 2009) and/or Article 16, § 7 of the Wyoming Constitution and thus this Court does not have subject matter jurisdiction over some or all the claims presented.
>
> 3.  Defendant is immune from liability for the claims of Plaintiffs, or some of them, under the Wyoming Governmental Claims Act, W.S. § 1-39-101, *et seq.* (LexisNexis 2009) and/or Article 1, § 8 and Article 16, § 7 of the Wyoming Constitution.
>
> . . . .
>
> 11.  Plaintiffs' claims, or some of them, are barred by the statute of limitations.

[¶12]  As noted above, the district court granted summary judgment to the Board on the ground that the Smiths' inverse condemnation cause of action was barred by the statute of

---

[1] The background facts set forth above are taken from the Smiths' Complaint.  Suffice it to say that, while denying many of the facts and legal conclusions of the Complaint, the primary defense to the issues involving the creation of the road is the Board's position that it is not required at this point in time to follow the statutory road creation procedures because the Smiths' driveway is part of the existing County Road 11.

limitations found in the WGCA. The district court's analysis leading to this conclusion is enlightening and we will quote from it at length:

> Inverse condemnation is explained by the Wyoming Statutes as follows:
>
>> When a person possessing the power of condemnation takes possession of or damages land in which he has no interest, or substantially diminishes the use or value of land, due to activities on adjoining land without the authorization of the owner of the land or before filing an action of condemnation, the owner of the land may file an action in district court seeking damages for the taking or damage and shall be granted litigation expenses if damages are awarded to the owner.
>
> Wyo. Stat. Ann. § 1-26-516 (2011).
>
> Until very recently, the Wyoming Supreme Court has been consistent concerning whether the requirements and time limits of the WGCA apply to a claim of inverse condemnation. For example, twelve years ago in *Waid v. State ex rel. Dept. of Transp.*, 996 P.2d 18 (Wyo. 2000), the Wyoming Supreme Court unequivocally held that the time limitations of the WGCA apply to claims of inverse condemnation.
>
>> The requirement that a claim be presented pursuant to the procedure established by the Wyoming Governmental Claims Act is applicable to inverse condemnation actions, and the claim must be filed within two years of the "act, error or omission" giving rise to the claim.
>
> *Id*. at 25. Four years later, in *Lankford v. City of Laramie*, 2004 WY 143, 100 P.3d 1238 (Wyo. 2004), the Wyoming Supreme Court held that applying the time limitations of the WGCA to inverse condemnation claims is not unconstitutional.
>
>> The conclusion that inverse condemnation claims are subject to the limitation periods found in the WGCA means that the district court was correct in applying its

statute of limitation analysis to all of the state law claims. The next logical question then becomes whether that analysis was appropriate. We cannot help but conclude that it was. The amended complaint reflected on its face that the action was not filed within one year of presentment of the claim. Our law is clear that the district court does not have subject matter jurisdiction to adjudicate governmental claim cases where the action was not timely filed.

*Id.*, ¶ 22, 100 P.3d at 1244. Next, in 2008, the Wyoming Supreme Court again clearly opined that the time limitations of the WGCA apply to inverse condemnation claims.

There is little question that the Goses' claim for inverse condemnation is subject to the time limits for filing claims set forth in the Wyoming Governmental Claims Act, as well as the requirements of Wyo. Const. art. 16, § 7. *Waid v. State ex rel. Dept. of Transp.*, 996 P.2d 18, 24-25 (Wyo. 2000). ("[The parties] agree that the time limits for filing claims set forth in the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1-39-101 through 1-39-120, apply to a claim against the State for inverse condemnation…. [W]e agree with the parties that the time limits articulated in Wyo. Stat. Ann. § 1-39-113 apply.").

*Gose v. City of Douglas,* 2008 WY 126, ¶ 15, 193 P.3d 1159, 1163 (Wyo. 2008), overruled on other grounds by *Brown v. City of Casper*, 2011 WY 35, 248 P.3d 1136 (Wyo. 2011). Finally, in 2011, the Wyoming Supreme Court again noted that claims of inverse condemnation require compliance with the WGCA.

In *Wyo. State Highway Dep't v. Napolitano*, 578 P.2d 1342, 1346 (Wyo. 1978), the Court held that presenting a notice of claim is a condition precedent to suing the State **even in condemnation cases**. . . .

Up to this point, Wyoming law was clear that presentation of a notice of claim is required in order to bring an action against a governmental entity and the

failure to comply with that condition precedent results in dismissal.

*Brown v. City of Casper*, 2011 WY 35, ¶¶ 27-28, 248 P.3d 1136, 1143 (Wyo. 2011) (emphasis added). Thus, from 2000 through 2011, the Wyoming Supreme Court consistently required that inverse condemnation claims comply with the requirements in the WGCA.

However, the day before the summary judgment hearing in this case, the Wyoming Supreme Court issued its opinion in *Sinclair v. City of Gillette*, 2012 WY 19, [270 P.3d 644 (Wyo. 2012)], where it seemingly altered its tone on this issue. The plaintiffs in *Sinclair* submitted a notice of claim to the City of Gillette and then filed a complaint in district court. *Id*., ¶ 5. Their complaint included three claims of relief: (1) injunction, (2) "statutory damages" for inverse condemnation, and (3) "alternative damages" consistent with their WGCA notice of claim. *Id*. The Wyoming Supreme Court held that the plaintiffs third cause of action was not viable under the WGCA and, therefore, was barred by the doctrine of governmental immunity. *Id*., ¶ 16. The Court then went on to discuss the plaintiffs' inverse condemnation claim:

> The Sinclairs also brought a claim against the City under the Wyoming Eminent Domain Act. One section of that Act, Wyo. Stat. Ann. § 1-26-516, is entitled "Action for inverse condemnation," and provides that:
>
>> When a person possessing the power of condemnation takes possession of or damages land in which he has no interest, or substantially diminishes the use or value of land . . . before filing an action of condemnation, the owner of the land may file an action in district court seeking damages for the taking or damage and shall be granted litigation expenses if damages are awarded to the owner.
>
> **We have established that the Wyoming Eminent Domain Act "covers the entire subject of eminent domain." *L.U. Sheep Co. v. Board of County***

6

**Comm'rs**, 790 P.2d 663, 669 (Wyo. 1990). **Accordingly, the Act provides the exclusive remedy available in cases of inverse condemnation.** *See* **Waid v. State, 996 P.2d 18, 23 (Wyo. 2000).** The fact that the Sinclairs' exclusive remedy is under the Wyoming Eminent Domain Act reinforces our conclusion that they have no viable cause of action against the City under the Wyoming Governmental Claims Act.

*Id*., ¶ 17 (emphasis added). The Wyoming Supreme Court's language in *Sinclair* hints that the WGCA does not apply to causes of action for inverse condemnation and that only the Wyoming Eminent Domain Act applies to such claims.

. . . .

This Court recognizes the conflict inherent in requiring an inverse condemnation claimant to operate under the WGCA. Specifically, the WGCA affirms governmental immunity "from liability for **any tort** except as provided in W.S. 1-39-105 through 1-39-112." Wyo. Stat. Ann. § 1-39-104(a) (2011) (emphasis added). A legitimate question exists regarding whether inverse condemnation is a tort and should be subject to the WGCA. Further, none of the exceptions found in Wyoming Statutes 1-39-105 through 1-39-112 appear to waive immunity for anything approaching inverse condemnation. Thus, even if a claimant complies with all requirements under the WGCA, it could be argued that the claimant would have no remedy because the WGCA does not waive governmental immunity for inverse condemnation. However, in light of the very explicit statements from the Wyoming Supreme Court over the past decade which hold that the WGCA "is applicable to inverse condemnation actions," *Waid, supra*, this Court finds little choice in the matter but to apply the WGCA's requirements to inverse condemnation claims.

. . . .

In sum, this Court believes it has no alternative but to conclude that the WGCA applies to Plaintiffs' two claims of inverse condemnation based upon controlling case law from

the Wyoming Supreme Court. . . . Therefore, Plaintiffs' claims of inverse condemnation are barred by the two-year time limitation set forth in Wyoming Statute § 1-39-113(a). Accordingly, summary judgment must be granted in the Board's favor on these two claims.

[¶13] We have quoted at such length from the district court's decision letter because it makes several points that need to be made in this opinion. First, it sets forth this Court's precedent on the subject, while recognizing the "hole in the dike" left by *Sinclair*. Second, it notes the inconsistency resulting from requiring an inverse condemnation claimant to meet the requirements of the WGCA, while the WGCA itself provides no remedies for such claimant. And third, it reluctantly embraces the doctrine of precedent that requires the district court to abide by the ruling of this Court, even when the district court obviously does not agree.

[¶14] This seems a good point to interject some comments about *stare decisis*, which doctrine has been defined as follows:

> The doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation.

*Black's Law Dictionary* 1537 (9th ed. 2009). The reasons for this Court's usual adherence to precedent were described in *Borns ex rel. Gannon v. Voss*, 2003 WY 74, ¶ 25, 70 P.3d 262, 271 (Wyo. 2003):

> "'Today's decision is supported, though not compelled, by the important doctrine of *stare decisis*, the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. That doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact. While *stare decisis* is not an inexorable command, the careful observer will discern that any detours from the straight path of *stare decisis* in our past have occurred for articulable reasons, and only when the Court has felt obliged "to bring its opinions into agreement with experience and with facts newly ascertained."'"

> *State v. Carter*, 714 P.2d 1217, 1228 (Wyo. 1986) (Urbigkit, J., dissenting, with which Cardine, J. joined (*quoting Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 412, 52 S.Ct. 443, 449, 76 L.Ed. 815 (1932) (Brandeis, dissenting) and *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 624-25, 88 L.Ed.2d 598 (1986)). Similarly, in *Worthington v. State*, 598 P.2d 796, 804 (Wyo. 1979), we declared that "[w]ithout exercise of judicial restraint in this area, the law would lose its stability and certainty, which is the basis of a well-ordered society and the keystone of a stable and orderly system." In recent years, we have often cited *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991) for the proposition that *stare decisis* "furthers the "'evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.""'" *State ex rel. Wyoming Workers' Compensation Div. v. Barker*, 978 P.2d 1156, 1161 (Wyo. 1999) (*quoting Goodrich v. Stobbe*, 908 P.2d 416, 420 (Wyo. 1995) and *Cook v. State*, 841 P.2d 1345, 1353 (Wyo. 1992)).

[¶15] Recognizing that *stare decisis* is not an "inexorable command," but a "principle of policy," we have rejected it now and then over the years for specific articulated reasons. *See, e.g., Arnott v. Arnott,* 2012 WY 167, ¶¶ 2, 29, 293 P.3d 440, 442, 453 (Wyo. 2012) (presumption in best interest of child analysis when custodial parent relocates overturned); *Motley v. Platte Cnty.*, 2009 WY 147, ¶ 6, 220 P.3d 518, 520 (Wyo. 2009) (Burke, J., dissenting) (governing decisions are unworkable or are badly reasoned) (*overruled in part on other grounds by Brown v. City of Casper*, 2011 WY 35, ¶¶ 38-44, 248 P.3d 1136, 1145-47 (Wyo. 2011)); *Borns*, 2003 WY 74, ¶ 26, 70 P.3d at 271 (need for common law to keep pace with society); *Dunnegan v. Laramie Cnty. Comm'rs*, 852 P.2d 1138, 1140 (Wyo. 1993) ("to prevent the perpetuation of error and 'to vindicate plain, obvious principles of law[]'"); *Cook v. State*, 841 P.2d 1345, 1353 (Wyo. 1992) ("to clarify an inappropriate application of a traditional rule [so as] 'to vindicate plain, obvious principles of law and remedy continued injustice[]'"); and *Oroz v. Bd. of Cnty. Comm'rs*, 575 P.2d 1155, 1157 (Wyo. 1978) (to discontinue an unfair and improper rule that operates to the detriment of those who may suffer tortious injury; to re-examine the efficacy of an anachronistic doctrine in modern society). Plainly put, the rule of *stare decisis* does not justify the perpetuation of past wrongs.

[¶16] A few points can be added to the district court's observations to help explain why this Court now concludes that the WGCA should not, and does not, apply to inverse condemnation actions. In 1978, this Court issued the *Oroz* opinion mentioned above. *See supra* ¶ 15. In that opinion, we concluded that the long-standing doctrine of

governmental immunity from damages in tort actions should be abrogated, despite the equally long-standing doctrine of *stare decisis*. *Id*., 575 P.2d at 1157-58. The gravamen of our opinion was that enforcement of the doctrine resulted in "unfair and inequitable consequences" and that, instead, governmental entities should be subject "to the same rules as private persons or corporations if a duty has been violated and a tort has been committed." *Id*. at 1158. In short, the focus of *Oroz* was upon torts and upon immunity.

[¶17] Very shortly after *Oroz* was published, the Wyoming Legislature adopted the Wyoming Governmental Claims Act. Significantly, in stating the purpose of the Act, the Legislature referred specifically to *Oroz* and "recognize[d] the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity." Wyo. Stat. Ann. § 1-39-102. The focus of the WGCA, like the focus of *Oroz*, was upon torts and upon immunity. The Act was not, however, open-ended. Schematically, the WGCA retained governmental immunity for tort liability, but then enumerated numerous specific exceptions where such immunity would no longer apply. Wyo. Stat. Ann. §§ 1-39-104 to -121.

[¶18] It is within this context that we now discuss inverse condemnation. Both the Wyoming Constitution and Wyoming Statutes provide for the exercise of the power of eminent domain. Wyo. Const. art. 1, § 32; Wyo. Stat. Ann. §§ 1-26-501 to -516 (LexisNexis 2011). Similarly, both the Wyoming Constitution and the Wyoming Statutes require that the exercise of the power of eminent domain--sometimes called a "taking"--cannot occur without the payment of just compensation for the property lost. Wyo. Const. art. 1, § 33; Wyo. Stat. Ann. § 1-26-514. More particular to the instant action, Wyo. Stat. Ann. § 1-26-516 provides that when a taking has occurred without the contemplated compensation, the injured party "may file an action in district court seeking damages for the taking or damage . . . ." This action is called an inverse condemnation action.

[¶19] Logic now leads us to conclude that there is nothing about the constitutional and statutory right to an inverse condemnation action, and nothing about the WGCA, that could reasonably suggest that the former should be subject to the latter. The WGCA abrogated governmental immunity for certain listed torts. Inverse condemnation is not a tort, and because it is a constitutional and statutory remedy, it never was subject to governmental immunity. *See* 11A McQuillin, *Municipal Corporations* § 32:158, at 383 (3d ed. Revised 2009) (inverse condemnation is not based on tort or contract principles). In fact, just the opposite is true; rather than recognizing or providing for governmental immunity, both the constitutional provision and the statute provide that there can be no taking without compensation. The avowed purpose of the WGCA was to enlarge the number of circumstances in which a private citizen could seek a remedy from a governmental entity. The tool used in achieving that goal was the abrogation of common law governmental immunity for certain specific torts. For example, Wyo. Stat. Ann. § 1-39-105 provides as follows:

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any motor vehicle, aircraft or watercraft.

Neither the purpose nor the structure of the WGCA suggests that it applies to inverse condemnation actions, which was the subtle message underlying the district court's decision letter.

[¶20] If the WGCA does not, as a general matter, apply to inverse condemnation claims, neither does its two-year period of limitations for the presentment of a claim, found in Wyo. Stat. Ann. § 1-39-113, nor its one-year period of limitations for the commencement of an action, found in Wyo. Stat. Ann. § 1-39-114. The question then becomes what period of limitations does apply in inverse condemnation actions. The answer to that question is not readily apparent within the Eminent Domain Act, found at Wyo. Stat. Ann. §§ 1-26-501 to -516. Furthermore, there does not appear to be a consensus nationwide on what statute of limitations should apply. *See* 27 Am. Jur. 2d *Eminent Domain* § 795 (2004). While this Court has not directly addressed the application of a statute of limitations to inverse condemnation claims, outside of the WGCA, we did make the following observation in *dicta* in *Cheyenne Airport Bd. v. Rogers*, 707 P.2d 717, 725 (Wyo. 1985):

> Section 1-3-103, W.S. 1977, provides that an action for the recovery of title or possession of lands, tenements or hereditaments can only be brought within ten years after the cause of action accrues. Cases from other jurisdictions indicate that the running of such statutes of limitations bar subsequent claims of inverse condemnation. See Annot., 26 A.L.R.4th 68 (1983). Thus, § 1-3-103, supra, would seemingly preclude a claim (had such a claim even been made) that the federal or state government had taken a general flight easement by either their declarations of public right of way or by their use of the airspace.

*Id.*; *see also* 11A McQuillin, *Municipal Corporations, supra,* at § 32:162, at 412-13.

[¶21] While there may be some logic in comparing inverse condemnation to causes of action such as adverse possession--the common denominator being someone's use of another's property without permission or compensation--that logic does not extend into a reading of Article 1, Chapter 3 of the Wyoming Statutes, which is entitled "Limitation of

11

Actions." Wyo. Stat. Ann. § 1-3-103 is entitled "Recovery of real property; generally." It reads as follows:

> An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten (10) years after the cause of such action accrues.

An action in inverse condemnation is not an action for the recovery of the title or possession of property. It is an action for damages. Wyo. Stat. Ann. § 1-3-103 is not ambiguous, and by its clear words, it does not apply to inverse condemnation actions.

[¶22] On the other hand, the language of Wyo. Stat. Ann. § 1-3-105(a)(ii)(B) much more closely fits an inverse condemnation action. First, the section is entitled "Actions other than recovery of real property." An inverse condemnation action is an "action other than recovery of real property." Second, the language of the subsection speaks directly to such a cause of action:

> (a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:
>
> . . . .
>
> (ii) Within eight (8) years, an action:
>
> . . . .
>
> (B) Upon a liability created by statute other than a forfeiture or penalty.

[¶23] Although both article 1, section 32 and article 1, section 33 of the Wyoming Constitution declare that private property shall not be taken without compensation, it is Wyo. Stat. Ann. § 1-26-516 that creates the cause of action whereby an injured party may recover damages from the person responsible for an unlawful taking. The statute does not create a forfeiture or a penalty; it creates liability for damages caused by a taking. The period of limitations for bringing an action in inverse condemnation is eight years.

[¶24] The pleadings allege, and the district court found, that the Smiths submitted a notice of claim to the Board on February 10, 2009, prior to the filing of the instant action, which occurred on February 3, 2010. The notice of claim is in the record, and it clearly

appears to meet the requirements of article 16, section 7 of the Wyoming Constitution.[2] Without going into unnecessary detail as to dates, we will note that the current controversy began in 2006 with the filing of the Justice petition described above. *See supra* ¶ 5. The district court found that the Smiths knew of their inverse condemnation claim via events occurring on May 17, 2006, or, at the latest, on October 4, 2006. Inasmuch as a period of eight years has not passed since then, the statute of limitations has not run on the Smiths' claim.

## CONCLUSION

[¶25] We conclude that inverse condemnation actions are not subject to the WGCA, and we reverse all previous opinions of this Court that have held to the contrary. The period of limitations applying to inverse condemnation actions is that period found in Wyo. Stat. Ann. § 1-3-105(a)(ii)(B), a period of eight years. The Smiths' action was filed well within that period. Therefore, we reverse and remand to the district court for further proceedings consistent with this opinion.

---

[2] The specific issue before the Court in this case is the period of limitations for commencing an action, not the period of limitations for presenting a claim. Because we have concluded that the WGCA does not apply to inverse condemnation actions, neither WGCA period of limitations applies in this case. Article 16, section 7 of the Wyoming Constitution continues to require, however, that claims against governmental entities not be **paid** until a "full itemized statement" of such is filed in the appropriate office. We do not herein undertake to determine the appropriate time constraints for the presentment of such a claim under this payment provision.