# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 102

**APRIL TERM, A.D. 2024**

**September 25, 2024**

THOMAS A. and KAREN R. BIENZ;
LYNN MARIE BROUGHTON and
BARRY D. MATLACK; BILLY E.
BROWN; K.R. BROWN and D.L.
MATTHEW, as Trustees of the
Brown-Matthew Revocable Trust;
ROBERT and MARY BROWNELL;
ROBERT and KATHY L. BUCKARDT;
MARTY CARTER; ANTHONY C.
CLASSI and LINDA D. JOHNSON;
ROBERT C. CORCORAN, Trustee of the
Robert C. Corcoran Living Trust; ALISON
A. CORCORAN, Trustee of the Alison A.
Corcoran Living Trust; MAX D. and LORI
A. COULTHARD; LESLIE A.
DARNALL, Trustee of the Leslie A.
Darnall Living Trust; ROBERTA M.
DARNALL, Trustee of the Roberta M.
Darnall Living Trust; DANNY and
ROBERTA DUNLAVY; SANDRA
FARWELL EIKE, Trustee of the Sandra
Farwell Eike Revocable Trust; JOHN
BRUCE EMBURY; CLIFFORD D.
FERRIS; JESSICA ANN and RAY
STUART FERTIG, III; ALAN and CHERI
C. FRANK; ROBERT F. GARLAND, III,
Trustee of the Robert F. Garland Revocable
Trust; ROBERT L. and JANE R.
GONZALES; JD and CANDY
HAMAKER; MARY L. HADEN-WING
and LARRY HADEN-WING, Trustees of
the Mary L. Hayden-Wing Revocable Trust;
ROBERT F. and CAROLYN W.
HELLING; DONALD L. JARVIS; ORY J.

JOHNSON; CHERYL L. and LYLE JOHNSTON; KEITH KENNEDY; GREG and DIANNA KERR; DEREK J. MANCINHO; ERNIE and CINDY MECCA; JOHN F. NELSON and JUDITH NELSON, Trustees of the Judith E. Nelson Family Living Trust; DANIEL A. NETZEL, Trustee of the Daniel A. Netzel Revocable Trust; JON MICHAEL PIKAL and EVA SIGLINDA FERRE-PIKAL; JAMES L. and SALLY R. RICHARD; HENRY R. RICHTER and RITA ALLMARAS-RICHTER; SHAWN SANDERS and SANDERS PROPERTIES, LLC; KAREN DIANE SINGER; ELIZABETH H. and RICHARD B. SOUTHWELL JR.; KIMBERLY J. STARKEY, Trustee of the Kimberly J. Starkey Revocable Trust; ROBERT J. STARKEY, JR., Trustee of the Robert J. Starkey, Jr. Revocable Trust; TIMOTHY and KIMBERLY TAYLOR; MARIANNE VINER; FRED C. and PEGGY J. WATERS; THOMAS W. WEBER, Trustee of the Thomas W. Weber Trust; ARNOLD and WANDA WILLEMS; WILLIAM A. WOLF, Trustee of the William A. Wolf Revocable Trust; LYLE HAROLD and JANICE KAY WOMACK,

Appellants
(Petitioners),

v.

BOARD OF COUNTY COMMISSIONERS, COUNTY OF ALBANY, WYOMING,

Appellee
(Respondent).

S-24-0031

WARREN LIVESTOCK, LLC, a Wyoming limited liability company; JHD RANCH LLC, a Wyoming limited liability company; PILOT PEAK LLC, a Wyoming limited liability company; and LODGEPOLE RANCH LLC, a Wyoming limited liability company,

Appellants
(Petitioners),

v.

BOARD OF COUNTY COMMISSIONERS, COUNTY OF ALBANY, WYOMING,

Appellee
(Respondent).

S-24-0032

*Appeal from the District Court of Albany County*
*The Honorable Misha E. Westby, Judge*

*Representing Appellants Bienz et al.:*
> Daniel B. Frank, Frank Law Office, P.C., Meriden, Wyoming.  Argument by Mr. Frank.

*Representing Appellants Warren Livestock, LLC; JHD Ranch LLC; Pilot Peak LLC; and Lodgepole Ranch LLC:*
> Mitchell H. Edwards, Nicholas & Tangeman, LLC, Laramie, Wyoming.  Argument by Mr. Edwards.

*Representing Appellee Board of County Commissioners, County of Albany, Wyoming:*
> Matthew E. Ayres, Jennifer M. Curran, and Edward Kurt Britzius, Albany County & Prosecuting Attorney's Office, Laramie, Wyoming.  Argument by Mr. Ayres.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    In these consolidated appeals, Thomas A. and Karen R. Bienz, et al. (Property Owners) and Warren Livestock, LLC, et al. (Warren Livestock) seek judicial review under the Wyoming Administrative Procedure Act (WAPA) challenging the Albany County Board of County Commissioners' (Board) amendments to zoning regulations referred to as the Aquifer Protection Overlay Zone (APOZ).  The district court dismissed the petitions for review, concluding that it lacked jurisdiction because the amendments were legislative acts and not reviewable under the WAPA.  On appeal, Property Owners and Warren Livestock argue that the Board's adoption of the APOZ amendments is reviewable and, among other things, that the Board lacked the authority to adopt the amendments.  We conclude that the characterization of the Board's action as legislative or adjudicatory does not preclude review but instead dictates the scope and nature of the review.  We reverse and remand.

*ISSUE*

[¶2]    Property Owners and Warren Livestock raise numerous issues.  We remand to the district court on the first issue, which is:

> Are the APOZ amendments reviewable on direct appeal under
> the WAPA?

and do not reach the remaining issues.[1]

*FACTS*

[¶3]    The Casper Aquifer underlies land in Albany County lying east of the City of Laramie and on the western slope of the Laramie Range.  It supplies drinking water to

---

[1] The remaining issues are:
1.   Did the Board's adoption of rules for the purpose of regulating the water quality of the Casper Aquifer exceed its statutory authority?
2.   Did the Board exceed its statutory authority when it amended the APOZ regulations to address groundwater quality which is the exclusive province of the Wyoming Department of Environmental Quality (DEQ)?
3.   Did the Board's adoption of new rules for the inclusion and exclusion of property in the overlay zone violate the Wyoming Constitution's equal protection clause?
4.   Did the Board act arbitrarily, capriciously, contrary to law or procedure, or in excess of its statutory authority when it established a 35-acre minimum lot size for the overlay zone?
5.   Did the Board act arbitrarily, capriciously, or otherwise not in accordance with the law when it amended the APOZ regulations without reliable supporting data?
6.   Did the Board act arbitrarily, capriciously, or otherwise not in accordance with the law when it adopted other amendments to the APOZ that create ambiguities in the regulations and impose new expenses on landowners who own property in the APOZ?

1

many Albany County residents including to nearly 60% of those residing in the City of Laramie.

[¶4]    The Federal Safe Drinking Water Act required states to adopt wellhead protection programs to "protect wellhead areas within their jurisdiction from contaminants which may have any adverse effect on the health of persons."  42 U.S.C. § 300h-7 (2018).  In 1997, the Wyoming Department of Environmental Quality (DEQ) developed Wyoming's Wellhead Protection Program which was approved by the Environmental Protection Agency (EPA).    Wyoming's Wellhead Protection Program provides criteria and methodologies for delineating aquifer protection areas.  In 1999, a group of licensed geologists and engineers, in accordance with Wyoming's Wellhead Protection Program, developed a Delineation Report for the Casper Aquifer Area.  The Delineation Report sets forth zones and boundaries for protection of the aquifer.  The DEQ approved the Delineation Report in 2000.

[¶5]    In 2002, the Board adopted the Casper Aquifer Protection Plan (CAPP), which included the DEQ-approved Delineation Report.[2]  The Board then adopted regulations intended to protect the aquifer.  These regulations include an overlay zone (Aquifer Protection Overlay Zone, or APOZ) prohibiting certain land uses and restricting development in the APOZ.  The Board amended the regulations in 2012 and 2023.  The 2023 amendments are at issue here.[3]

---

[2] The DEQ approved the 2002 CAPP in 2007, finding that it "met all requirements as described in the Wyoming Wellhead Protection Guidance Document."  Shortly thereafter, Albany County began updating the CAPP, and the Board adopted an updated CAPP in 2011.  It is not clear from the record whether DEQ approval of the updated CAPP is required and nothing in the record indicates whether DEQ approved the updated CAPP.

[3] Specifically, the Property Owners and Warren Livestock take exception to:

1.   The addition of language stating, "The purpose of the Aquifer Protection Overlay Zone (APOZ) is to prevent degradation to the water quality within the Casper Aquifer."

2.   Language defining "Aquifer Protection Overlay Zone (APOZ) Development" and allowing the Board to regulate activities "that may result in the introduction of contaminants and/or increasing the vulnerability of the aquifer to contamination."

3.   Amendments modifying the method of determining APOZ boundaries and disconnecting boundary determinations from the original DEQ-approved Delineation Report and the CAPP.

4.   Amendments exempting APOZ boundary amendments from notice and procedural requirements applicable to other amendments to the Albany County Zoning Regulations.

5.   Amendments specifying requirements to exclude property from the zone boundary.

6.   The creation of a 35-acre minimum lot size and more restrictive density requirements.

7.   Amendments which the Landowners allege "create ambiguity, . . . are arbitrary, unworkable, depart from the recommendations of the County CAPP, and are unreasonable as applied to the [Landowners]" as follows:

    • (§ 3.D.2) Adding new language incorporating the findings of the CAPP and its updates.

    • (§ 3.D.4.b) Defining Best Available Control Technology and mandating Best Available Control Technology in repair of damaged systems.

    • (§ 3.D.4.f) Changing the definition of "Vulnerable Feature" by: (1) referring to physical features at

2

[¶6]    In their petitions for review, the Property Owners and Warren Livestock argued that the Board's adoption of the 2023 amendments to the APOZ was arbitrary, capricious, or otherwise not in accordance with the law, that the amendments violated the Wyoming Constitution, and that the Board exceeded its authority when it adopted them.  The district court consolidated the petitions and dismissed them for want of jurisdiction.  The Property Owners and Warren Livestock filed timely appeals.

## DISCUSSION

### Are the APOZ amendments reviewable on direct appeal under the WAPA?

"or near" the ground surface; (2) removing a qualifying term relating to "exposed bedrock" with the effect of expanding the scope of APOZ from permeable to all exposed bedrock, permeable and impermeable; and (3) removing the term "defined drainages" and generically referring to "drainages."
• (§ 3.D.5.a&b) Changing the description of the APOZ and stating it is based on the CAPP, and removing a specific boundary reference.
• (§ 3.D.5.b) Exempting the Board from having to follow the procedures of former § 3.D.4.c.
• (§ 3.D.5.c) Adding the term "previously surveyed parcels" to the regulation related to exclusions of land.
• (§ 3.D.5.c.3) Giving the Board authority to approve or disapprove an application for exclusion regardless of data supporting exclusion of the parcel.  Deleting language under "Findings Necessary for Approval" related to a standard for exclusion and property owner requests for exclusion of property.
• (§ 3.D.9.b) Deleting the expressed purpose for a Site Specific Investigation (SSI) as described in the CAPP: "The purpose of the Site Specific Investigation SSI is to determine the vulnerability of the aquifer Casper Aquifer to contamination by the proposed APOZ Development as a result of the presence of Vulnerable Features on the subject property."
• (§ 3.D.9.c.iii) Adding language referring to the presence of "any other hydrogeologic conditions relevant to the potential for compromising aquifer water quality."
• (§ 3.D.9.c.vi) Replacing the term "Vulnerable Feature" with new language "any other hydrogeologic conditions."
• (§ 3.D.9.b) Adding "with appropriate expertise" to the designation of professional engineer or geologist.
• (§ 3.D.9.c.i) Deleting the words "literature" and "mapped" from the Vulnerable Features definition.
• (§ 3.D.9.c.vi) Removing language from the basis for conducting an SSI related to characterization and assessment of the potential risk of contamination based on Vulnerable Features present on property.
• (§ 3.D.9.c.xi) Requiring applicants to indicate use of pesticides, fertilizers, or herbicides.
• (§ 3.D.9.d) Adding "other qualified professional licensed in the State of Wyoming" as persons the County may hire (at the applicant's expense) to review SSIs submitted by the applicant's professional engineer or geologist.
• (§ 3.D.10.a) Requiring an applicant to hire a Professional Engineer or Professional Geologist to prepare plans and specifications for installation, repair, and removal of an existing septic system.
• (§ 3.D.10.b) Requiring landowners to pay for septic system pumping upon transfer of ownership regardless of necessity.
• (§ 3.D.10.d) Requiring a septage pumper/hauler to determine the condition of septic systems and report the condition to the County along with a proposed schedule for any resolution.
• (§ 3.D.10.f) Requiring a septage pumper/hauler to determine if septic systems are adequately designed or constructed.

3

[¶7]   The pivotal issue on appeal is whether the district court had subject matter jurisdiction over the claims of Warren Livestock and the Property Owners.  We review questions of jurisdiction and of law de novo.  *Elliott v. Natrona Cnty. Bd. of Comm'rs*, 2023 WY 61, ¶ 7, 530 P.3d 1078, 1081 (Wyo. 2023), *reh'g denied* (June 27, 2023); *Campbell Cnty. Bd. of Comm'rs v. Wyo. Horse Racing, LLC*, 2023 WY 10, ¶ 9, 523 P.3d 901, 905 (Wyo. 2023).

> Questions of jurisdiction are reviewed *de novo* pursuant to "the inherent power, and the duty, to address jurisdictional defects on appeal * * *."  *Pawlowski v. Pawlowski*, 925 P.2d 240, 242 (Wyo. 1996) (quoting *Gookin v. State Farm Fire and Cas. Ins. Co.*, 826 P.2d 229, 232 (Wyo. 1992)).  The absence of subject matter jurisdiction in a district court cannot be waived, and the court itself can challenge that jurisdiction at any time.  *Brunsvold v. State*, 864 P.2d 34, 36 (Wyo. 1993).  This court can have no greater jurisdiction of the subject matter than the district court.  Where the district court is without jurisdiction in an administrative appeal from an agency, this court must dismiss the appeal.  *Scanlon v. Schrinar*, 759 P.2d 1243, 1246 (Wyo. 1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1131, 103 L.Ed.2d 193 (1989) (quoting *Snell v. Ruppert*, 541 P.2d 1042, 1048 (Wyo. 1975)).

*Sheridan Ret. Partners v. City of Sheridan*, 950 P.2d 554, 556 (Wyo. 1997).

## A.   Judicial Review of Administrative Decisions and the Legislative/Adjudicative Dichotomy

[¶8]   The WAPA provides for judicial review of agency actions unless review is limited or precluded by statute or common law.  Wyo. Stat. Ann. § 16-3-114(a) provides:

> Subject to the requirement that administrative remedies be exhausted and **in the absence of any statutory or common-law provision precluding or limiting judicial review**, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, **or by other agency action or inaction** . . . is entitled to judicial review in the district court for the county in which the injury or harm for which relief is sought occurred[.]

Wyo. Stat. Ann. § 16-3-114(a) (LexisNexis 2023) (emphasis added).

4

[¶9]    The district court, relying on cases where we have declared that the WAPA does not apply to legislative actions or hearings, concluded that the Board's adoption of the APOZ amendments was a legislative act and, therefore, not subject to review under the WAPA. *See, e.g.*, *Holding's Little Am. v. Bd. of Cnty. Comm'rs of Laramie Cnty.*, 670 P.2d 699, 702 (Wyo. 1983).  The Property Owners and Warren Livestock contend that this conclusion was erroneous and that the issues they raised are reviewable under the WAPA.

[¶10]  We recognize our precedent—that legislative acts are not reviewable under the WAPA—has not been consistently applied and has in some instances insulated agency legislative actions from judicial review.  Our language that legislative acts are not reviewable under the WAPA is overbroad.  We take this opportunity to clarify there is no common law or general statutory exception to judicial review of agency legislative actions, instead, the WAPA provisions governing review, well-understood judicial principles, and separation of power principles guide the nature and scope of our review.

## B.    There Is No General Common Law Exception to Judicial Review of Agency Legislative Actions

[¶11]  We first addressed the interplay between legislative facts and the WAPA in *Scarlett v. Town Council, Town of Jackson, Teton Cnty.*, 463 P.2d 26 (Wyo. 1969), and revisited this interaction in *Lund v. Schrader*, 492 P.2d 202 (Wyo. 1971).  Neither of these decisions stands for the proposition that agency legislative actions are not subject to judicial review, and neither decision directly addressed legislative actions, but each distinguished legislative facts from judicial facts in resolving whether a contested case hearing was required under the WAPA.

[¶12]  In *Scarlett*, appellants raised several issues on appeal.  Of relevance here, they argued the town's annexation of certain property was void because the town did not hold a contested case hearing before it annexed the property, and the annexation was not supported by substantial evidence.  *Scarlett*, 463 P.2d at 27.  Addressing the contention that a contested case hearing was required prior to annexation, we held that because the act of annexation "does not take away the property from the owner, nor affect his private right," a contested case (defined as a proceeding "in which legal rights, duties or privileges of a party are . . . determined by an agency after an opportunity for hearing") was not required.  *Id.* at 29 (quoting *Stilz v. City of Indianapolis*, 55 Ind. 515, 519 (1877) and citing Wyo. Stat. § 9-276.19(b)(2)).  In reaching this conclusion, we distinguished between legislative and adjudicative facts: "a party who has a sufficient interest or right at stake in a determination of governmental action should have an opportunity for a trial type of hearing on issues of adjudicative facts, but that such a hearing often is not necessarily required on issues of legislative facts."  *Id.* at 29 (citations omitted).  We recognized that "the distinction between adjudicative facts and legislative facts is not always entirely clear."  *Id.*  We cautioned that the conclusion as to whether an issue implicates legislative or adjudicative facts must not be made "without analysis," but that the WAPA's guarantee

5

of a contested case hearing only applied when adjudicative facts were at issue. *Id.* Although we concluded a contested case hearing was not warranted because the town's decision rested on legislative facts, we considered the contention that the town lacked substantial evidence to support annexation. *Id.* at 30–31.

[¶13] Next, in *Lund v. Schrader*, the appellants challenged the formation of a unified school district, arguing it violated several provisions of the Wyoming Constitution and was void for the lack of a contested case hearing. We resolved the constitutional challenges, *Lund*, 492 P.2d at 205–09, before turning to the contention that a contested case hearing was required. *Id.* at 210. We again held that "contested cases were not [required for] legislative or argumentative-type hearings" and found "nothing in the Wyoming School District Organization Law of 1969 which suggests the holding of trial-type hearings" is required. *Id.* at 209.

[¶14] Significantly, neither *Scarlett* nor *Lund* held that the common law prohibits review of legislative acts under the WAPA. They stand for the proposition that a contested case hearing is not required to determine legislative facts. The Court in *Scarlett* resolved substantive challenges to the annexation, and in *Lund* we settled constitutional questions.

[¶15] The next case in our jurisprudence to address the interaction between agency legislative action and the WAPA is *McGann v. City Council of City of Laramie*. The dispositive issue in *McGann* was whether a City of Laramie zoning amendment was reviewable under the WAPA. *McGann v. City Council of City of Laramie*, 581 P.2d 1104, 1105 (Wyo. 1978). We determined that the zoning ordinance, which reclassified property in a residential zone to business, was a legislative act. *McGann* at 1106. Relying exclusively on *Scarlett* and *Lund* we declared, "the provisions of the [WAPA] do not apply to legislative actions or hearings." *Id.* at 1106. We found "reinforcement" for that conclusion in amendments to the WAPA that followed Laramie's 1976 zoning ordinance. In 1977 the legislature amended the WAPA to exclude "the governing body of a city or town when acting in a legislative capacity" from the definition of an agency and, therefore, from the purview of the WAPA. *Id.* at 1107. *McGann* effectively expanded our holdings in *Scarlett* and *Lund* to limit reviewability under the WAPA without fulsome analysis or citation to other authority.

[¶16] In two cases that followed, *Bd. of Cnty. Comm'rs of Teton Cnty. v. Teton Cnty. Youth Servs., Inc.* and *Holding's Little Am. v. Bd. of Cnty. Comm'rs of Laramie Cnty.*, we echoed, but did not analyze or apply, *McGann*'s maxim that the WAPA does not apply to legislative actions or hearings. In *Teton Cnty. Youth Servs.*, the majority held that any legislative exception to the applicability of the WAPA did not apply because the action in that case—determining whether Teton County Youth Services satisfied requirements for obtaining a development permit—was adjudicative in nature. *Bd. of Cnty. Comm'rs of*

6

*Teton Cnty. v. Teton Cnty. Youth Servs., Inc.*, 652 P.2d 400, 416 (Wyo. 1982).[4]  In *Holding's Little Am.*, we concluded that the action at issue—the approval and issuance of revenue bonds—was adjudicative and therefore reviewable. *Holding's Little Am.*, 670 P.2d at 702.

[¶17]  We next addressed the ostensible legislative action exception to the WAPA in *Sheridan Plan. Ass'n v. Bd. of Sheridan Cnty. Comm'rs*.  There, we ruled the Sheridan County Commissioners' approval of the Powder Horn Subdivision PUD was a "non-reviewable legislative act[]." *Sheridan Plan. Ass'n v. Bd. of Sheridan Cnty. Comm'rs*, 924 P.2d 988, 990–91 (Wyo. 1996) (citing *McGann*, 581 P.2d at 1106-07, and *Jurkiewicz v. Butler Cnty. Bd. of Elections*, 620 N.E.2d 146, 147 (Ohio Ct. App. 1993)). Notwithstanding this determination, we considered the Sheridan Planning Association's claims that the commissioners did not follow their own rules and that they had unlawfully delegated their authority to the planning and zoning commission. *Sheridan Plan. Ass'n*, 924 P.2d at 990–91.

[¶18]  In *Wyo. Horse Racing*, the Campbell County Board of Commissioners (Campbell County) adopted a resolution revoking prior approvals of simulcast operations under Wyoming's Pari-Mutuel Act. *Wyo. Horse Racing*, ¶ 1, 523 P.3d at 903; Wyo. Stat. Ann. § 11-25-102.  The operators of simulcast events appealed, and Campbell County argued the WAPA did not apply because its resolution was a legislative act.  We did not analyze or apply a common law exception to reviewability.  Rather, we concluded that because the resolution revoked prior approvals of the petitioners' operations, it was adjudicative in nature, and reviewable. *Wyo. Horse Racing*, ¶¶ 13–14, 523 P.3d at 905–06.

[¶19]  Finally, in *Brazinski*, the petitioners sought judicial review of Teton County's amendment to a planned unit development (PUD) permit to allow workforce housing. *Brazinski v. Bd. of Cnty. Comm'rs of Teton Cnty.*, 2024 WY 40, ¶ 1, 546 P.3d 545, 547–48 (Wyo. 2024).  The county argued its decision was not subject to judicial review "because, under the common law, zoning is a legislative action and legislative decisions are not subject to judicial review under the WAPA." *Id.* ¶ 13, 546 P.3d at 550.  We declined to address the question of whether the PUD amendment in question was a legislative action or whether all PUD amendments would be legislative actions, saying, "We need not decide whether an amendment of a PUD is always an unreviewable legislative action or whether we should apply the legislative/adjudicatory dichotomy to determine whether it is reviewable because the [petitioners] simply ask us to determine whether the Board followed its rules and regulations in approving [the PUD amendment]." *Id.* ¶¶ 17–18, 546 P.3d at 551.

---

[4] The dissent pointed out that because cities acting in their legislative capacity are not governed by the WAPA, *McGann* (which addressed a city ordinance) was not controlling in *Bd. of Cnty. Comm'rs of Teton Cnty. v. Teton Cnty Youth Servs., Inc.*, and it was unnecessary to determine whether the board's action was legislative or adjudicative.  It opined the WAPA would apply to legislative or adjudicative action. *Teton Cnty. Youth Servs.*, 652 P.2d at 421–22 (Raper, J., dissenting).

[¶20]   On review of these cases, we recognize we have been wrong in proclaiming, without qualification, that the common law prohibits review of an agency's legislative acts under the WAPA.  To the extent that *McGann* can be read to create a common law exception to such review, it is overruled.[5]  There is no common law prohibition to review of agency legislative acts.

## C.   There Is No General Statutory Exception to Judicial Review of Agency Legislative Actions

[¶21]   The WAPA anticipates judicial review of a final agency decision when any person is aggrieved in a "contested case, **or by other agency action or inaction**," and when there is no "statutory or common-law provision precluding or limiting judicial review."  Wyo. Stat. Ann. § 16-3-114(a) (emphasis added).

[¶22]   There is no general statutory prohibition to judicial review of the legislative actions of agencies, and we have found no statutory prohibition to review of zoning legislation. The WAPA does not distinguish between legislative and judicial actions of an agency.  It directs reviewing courts as follows:

> (c)    To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.   In making the following

---

[5]          Overruling prior case law is an act this Court approaches with caution.

We consider the doctrine of *stare decisis* to be an important principle which furthers the "evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Cook v. State*, 841 P.2d 1345, 1353 (Wyo. 1992) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991)).

Nevertheless, we should be willing to depart from precedent when it is necessary "to vindicate plain, obvious principles of law and remedy continued injustice." *Id.* When precedential decisions are no longer workable, or are poorly reasoned, we should not feel compelled to follow precedent. Stare decisis is a policy doctrine and should not require automatic conformance to past decisions.

*Brown v. City of Casper*, 2011 WY 35, ¶ 43, 248 P.3d 1136, 1146 (Wyo. 2011) (citation omitted). *See also Smith v. Bd. of Cnty. Comm'rs of Park Cnty.*, 2013 WY 3, ¶¶ 14–16, 291 P.3d 947, 951–52 (Wyo. 2013) (articulating our exercise of caution when abrogating common law but also recognizing that abrogation is necessary to avoid perpetuation of past errors).

determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.  The reviewing court shall:

> (i)	Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii)	Hold unlawful and set aside agency action, findings and conclusions found to be:
>
>> (A)	Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>>
>> (B)	Contrary to constitutional right, power, privilege or immunity;
>>
>> (C)	In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>>
>> (D)	Without observance of procedure required by law; or
>>
>> (E)	Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c).

[¶23]  We have a "well-established policy favoring judicial review in most instances," and consistent with that policy we have said, "the right to review is not precluded unless legislative intent to preclude judicial review is clear and convincing." *Gordon v. State by & through Capitol Bldg. Rehab.*, 2018 WY 32, ¶ 17, 413 P.3d 1093, 1100 (Wyo. 2018) (citing and quoting *Pisano v. Shillinger*, 835 P.2d 1136, 1138–39 (Wyo. 1992)). "[W]here substantial doubt about legislative intent exists, the general presumption favoring judicial review of administrative action is controlling." *Id.* (quoting *Pisano*, 835 P.2d at 1139 (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270 (1984))).  As pointed out above, we have found no statute that generally prohibits review of agency legislative action, and we have reviewed agency legislative actions on direct appeal under the WAPA.  *See Brazinski*, ¶ 1, 546 P.3d at 547 (examining whether Teton County followed its own rules when it approved zoning amendment without a determination as to whether the action was legislative or adjudicatory); *Sheridan Plan. Ass'n*, 924 P.2d at 990–91 (considering claims the commissioners did not follow their own

rules and that they had unlawfully delegated their authority to the planning and zoning commission); *Hoke v. Moyer*, 865 P.2d 624, 629–31 (Wyo. 1993) (reviewing county zoning amendment to determine whether it complied with statutory and regulatory requirements); *Lund*, 492 P.2d at 205–09 (reviewing constitutional challenges to school district consolidation).

[¶24] Our review of agency legislative acts is unremarkable. Even the legislature may not pass laws that violate the constitution. *Cathcart v. Meyer*, 2004 WY 49, ¶¶ 59–60, 88 P.3d 1050, 1072 (Wyo. 2004) (concluding term limit law violates the Wyoming Constitution). Legislative actions by administrative bodies are no less constrained,[6]

> [h]owever, there are differences between [agencies and state and federal legislatures] and these differences profoundly affect the availability and scope of judicial review. Unlike the legislative bodies of state or federal stature, [agencies] are the legislative arms [of the state] with few of the attributes of sovereignty. And they are the subject of judicial suspicion of local government, generated by political struggles and incidents of . . . corruption. . . . [Courts] have reviewed not only the substantive content of municipal legislation . . . , but have examined the procedure of local legislative bodies, and have even inquired into the interest and bias of members of the local legislative authorities.

4 Patricia E. Salkin, *Anderson's American Law of Zoning* § 42:5 (5th ed. 2024) (footnotes omitted).

## D.     Review Is Limited by the Separation of Powers Doctrine

[¶25] Absent a specific statutory limitation, agency legislative actions are reviewable under the WAPA. However, such review has limitations. Judicial review of agency

---

[6] In the zoning context, we note that counties have broad authority to zone in the public interest. *See* Wyo. Stat. Ann. §§ 18-5-201 through -207 (LexisNexis 2023). Yet, "[z]oning ordinances must, of course, conform to state and federal constitutional requirements and state and federal law." Eugene McQuillan, 8 *Law of Municipal Corporations* § 25:64, at 301 (3d ed., rev. vol. 2020). "[T]he general grant of power to [local governments] to adopt zoning laws in the interest of public welfare does not permit the local governing bodies to override the state law and the policies supporting it." *Ahearn v. Town of Wheatland*, 2002 WY 12, ¶ 14, 39 P.3d 409, 415–16 (Wyo. 2002) (citing *State ex rel. Baker v. Strange*, 960 P.2d 1016, 1018 (Wyo. 1998); *Vandehei Devs. v. Pub. Serv. Comm'n of Wyo.*, 790 P.2d 1282, 1286–87 (Wyo. 1990)); *see also River Springs Liab. Co. v. Bd. of Cnty. Comm'rs of Cnty. of Teton*, 899 P.2d 1329, 1337 (Wyo. 1995) (a county may only regulate mineral activity in such a way that it does not conflict with state regulation). "The justification for this rule of law is that [local governments] have no sovereignty independent from that of the state, and the only power available to them is the power that has been delegated to them by the state." *Ahearn*, ¶ 14, 39 P.3d at 416 (citing *Baker*, 960 P.2d at 1018).

legislative acts under the WAPA must take into account separation of powers and is more limited than review of non-legislative agency action. The separation of powers doctrine requires the courts "to give great deference to legislative pronouncements[.]" *Gordon*, ¶ 51, 413 P.3d at 1108 (quoting *Powers v. State*, 2014 WY 15, ¶ 7, 318 P.3d 300, 303 (Wyo. 2014)). "The wisdom or unwisdom of legislation, as is generally known, is not a matter for the courts to determine." *Denny v. Stevens*, 52 Wyo. 253, 75 P.2d 378, 378 (1938) (citation omitted). When the legislature chooses to delegate its power to local entities, our deferential approach is not abandoned. *See Bradley v. City of New Castle*, 764 N.E.2d 212, 216 (Ind. 2002).

[¶26] The separation of powers doctrine does not foreclose judicial review of agency legislative action under the WAPA, and there are circumstances where judicial relief is required. Accordingly, we will review agency legislative action to determine whether an agency action was "[c]ontrary to constitutional right, power, privilege or immunity"; was not "in accordance with law"; was "[i]n excess of statutory jurisdiction, authority or limitations or lacking statutory right"; or was divergent from its own rules. Wyo. Stat. Ann. § 16-3-114(c)(ii)(A)–(D); *see Lund*, 492 P.2d at 205–09; *Sheridan Plan. Ass'n*, 924 P.2d at 990–91; *Brazinski*, ¶¶ 17–18, 546 P.3d at 551; *see also* Salkin, *supra*, § 42:5.[7]

## E. Analytic Framework

[¶27] We take this opportunity to clarify the analytic framework courts should apply when reviewing actions of agencies under the WAPA. The reviewing court must first examine *each* amendment or action raised by the petitioner and determine the extent to which it is reviewable.[8]

---

[7] We note that there is a varied approach to the limits of judicial review of agency legislative zoning action. *See League to Save Lake Tahoe Mountain etc. v. Cnty. of Placer*, 290 Cal. Rptr. 3d 218, 268 (Ct. App. 2022), *review denied* (May 18, 2022) ("[j]udicial review of legislative action is limited to determining whether the enactment is arbitrary, capricious, or unconstitutional" (citation omitted)); *Quinn v. Town of Dodgeville*, 354 N.W.2d 747, 754 (Wis. Ct. App. 1984), *aff'd*, 122 Wis. 2d 570, 364 N.W.2d 149 (1985) ("Although zoning is a legislative function, judicial review exists in cases of abuse of discretion, excess of power or error of law." (citations omitted)); *Robertson v. Jefferson Par.*, 465 So. 2d 787, 790 (La. Ct. App. 1985) (Louisiana law provides for review of legislative zoning actions for "abuse of discretion, unreasonable exercise of police power, excessive use of powers, or denial of the right of due process."); *Erigan Co. v. Town of Grantwood Vill.*, 632 S.W.2d 495, 496 (Mo. Ct. App. 1982) (legislative zoning act is reviewable "only [to] assess whether the legislature has exercised its powers arbitrarily and unreasonably" (citation omitted)).

[8] We acknowledge the deference we pay to a district court's decision on administrative review is substantially less than in ordinary appeals; however, the district court's decisions "are of great help as an aid to our own analysis and may point up some factor not apparent to the parties but a subject of judicial discernment. . . . [We do not] denigrate the value of an intermediate judicial study." *Teton Cnty. Youth Servs.*, 652 P.2d at 421 (Raper, J., dissenting).

[¶28] In *Wyo. Horse Racing*, we made clear that the first step in determining the extent of review of agency action is a determination of whether the action is legislative or adjudicatory. *Wyo. Horse Racing*, ¶ 12, 523 P.3d at 905 (quoting *Holding's Little Am.*, 670 P.2d at 702). "[W]hether an agency's 'action is legislative is usually determined by comparison with adjudicatory proceedings.'" *Id.* (quoting *Holding's Little Am.*, 670 P.2d at 702). In *Holding's Little Am.* we explained:

> Legislative power is distinguished from judicial power, or legislation from adjudication, in that basically or usually it operates in the future, rather than on past transactions and circumstances, and generally, rather than particularly. . . .
>
> Legislative action produces a general rule or policy which applies to a general class of individuals, interests, or situations. Judicial or adjudicatory functions apply generally to identifiable persons and specific situations. 1 Am.Jur.2d *Administrative Law* § 164.

*Holding's Little Am.*, 670 P.2d at 702 (quoting 1 Am.Jur.2d *Administrative Law* § 93). Legislative actions operate in the future, apply to a general class of individuals, and "'produce[] a general rule or policy,' while adjudicatory action applies to 'identifiable persons and specific situations.'" *Sheridan Cnty. Comm'n v. V.O. Gold Properties, LLC*, 2011 WY 16, ¶ 7, 247 P.3d 48, 50 (Wyo. 2011) (quoting *Foster's Inc. v. City of Laramie*, 718 P.2d 868, 873 (Wyo. 1986)).

[¶29] If the court determines that the action is adjudicatory, it is reviewable under well-established law on direct appeal under the WAPA. Wyo. Stat. Ann. § 16-3-114. If the court concludes that the action is legislative and there is no specific statutory prohibition to review, it is reviewable, subject to the limitations discussed, *supra*. *See supra* ¶¶ 25–26.

[¶30] On remand, the district court will need to reexamine each amendment under this framework.

## *CONCLUSION*

[¶31] The district court has jurisdiction to review the APOZ amendments. We reverse and remand to the district court to conduct an analysis in conformance with this opinion. *See Douglass v. Wyo. Dep't of Transp.*, 2008 WY 77, ¶¶ 30–31, 187 P.3d 850, 856–57 (Wyo. 2008) (remanding agency appeal after concluding district court erred when it dismissed appeal as untimely).